# Stoball *v.* The State.

*Indictment for Murder.*

1. *Drawing of special venire in capital case ; presence of defendant not necessary.*—In a capital case, the defendant must be personally present in court when the day for his trial is fixed and the order is made summoning a special venire, and such presence must be affirmatively shown by the record on appeal ; but the law does not require that the

[Stoball v. The State.]

defendant be personally present when the special venire is drawn from the jury box, and his absence at such time furnishes no ground for quashing the venire or for the arrest of a judgment of conviction.

2. *Evidence; when questions, though prima facie objectionable, allowed to be asked.*—It is permissible to propound a question *prima facie* objectionable, when it is merely introductory to other questions necessary to elicit facts which are material to the issue involved; and on a trial for murder, it is not error to allow a witness to be asked as to his knowledge of the place where the deceased was killed, when such question is merely introductory to further questions, in the course of which he testified to facts relating to the killing which were material and relevant.

3. *Homicide; malice; definition thereof.*—A formed design, unlawfully to do mischief or injury to another, constitutes malice in its general, legal acceptation; and on a trial under an indictment for murder, an instruction properly defines malice, the essential element of murder, as "the formed design on the part of the defendant to take the life of the deceased unlawfully, not in self-defense, and without such provocation, allowed by law to be used, as would repel the imputation of malice."

4. *Same; instruction as to justification for the killing.*—On a trial under an indictment for murder, where the court instructs the jury in its general charge that "before the defendant in this case can set up the defense of self-defense, there must have been at the time a present, impending, imperious necessity to shoot," and upon the defendant excepting to this portion of the court's general charge, the court then explained to the jury that "the necessity need not be real, but an apparent necessity to shoot was sufficient to enable the defendant to set up self-defense," the instruction as explained and modified is correct, and the curing of the error in the charge, as originally given, is not prejudicial to the defendant.

5. *Same; duty of retreat.*—When, on a sudden quarrel, an assault is made, even with a dangerous or deadly weapon, it is the duty of the assaulted to retreat, unless the circumstances are such as to impress him with a reasonable belief that to retreat would increase his peril; and on a trial for murder, when the evidence shows that an assault with a deadly weapon was made upon the defendant on a sudden quarrel, and a mutual combat ensued, a charge which instructs the jury that "the defendant was under no duty to retreat, if she was assaulted by the deceased with a deadly weapon," is erroneous and properly refused.

6. *Same; when charges as to manslaughter in the second degree properly refused.*—On a trial under an indictment for murder, where every fact in evidence tends to no other conclusion than that the killing was intentional, instructions in reference to manslaughter in the second degree are abstract and are, therefore, properly refused.

7. *Same; different degrees of homicide; misleading charges.*—Where a trial is had under an indictment which comprehends different de-

grees of an offense, instructions to the jury predicated upon the insufficiency of the evidence to justify a conviction of a higher degree of the offense charged, without regard to its sufficiency to justify a conviction of a lesser degree, are erroneous; and on a trial under an indictment charging murder in the first degree, which comprehends all the degrees of criminal homicide, a charge which instructs the jury that "If you are reasonably doubtful as to the proof in this case of any material allegation of the indictment, you must acquit the defendant," is misleading and erroneous.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The indictment against the defendant in this case charged that she "Unlawfully and with malice aforethought killed Sallie Williams, against the peace and dignity of the State of Alabama." The defendant was tried under this indictment, convicted of murder in the second degree, and sentenced to the penitentiary for twenty-five years.

Before the trial had commenced and before the jury was empannelled to try her case, the defendant moved the court to quash the venire, and as grounds for said motion, assigned the following: 1st. The defendant was not present when the venire was drawn. 2d. The defendant was present when the day for the trial was set, and when an order was made for the drawing of the venire, but after the making of said order by the court the sheriff carried the defendant to jail where she remained when the venire or jury was drawn. The facts of the defendant's motion were admitted to be true by the State, and with this admission the motion was submitted to the court. The court overruled the motion, and the defendant then and there duly excepted. The defendant also made a motion in arrest of judgment, upon the same grounds, which motion was overruled, and the defendant duly excepted.

Upon F. V. Meriwether being introduced as a witness for the State, he was asked the following question: "Do you know where Sallie Williams is said to have been killed?" The defendant objected to this question upon the ground that it assumed as a fact proven, that Sallie Williams was killed, and was killed at a certain place. The court overruled the objection, and the defendant duly excepted. The witness answered he did, and then testified that he knew both the defendant and

Sallie Williams, and that on the night of December 24, 1896, he was sent for to see Sallie Williams; that he found her dead, with a pistol shot wound through her head; that he found in Sallie Williams' house two pistol balls, and that in front of the house he found an iron bar. The State introduced another witness, who testified that on the evening of December 24, 1896, in the county of Montgomery, Alabama, the defendant came by the house of Sallie Williams with a pistol in her hand; that the two engaged in a quarrel, and passed several blows; that they were separated and Sallie Williams then ran into her house and shut the door; that the defendant attempted to break the door down, and that upon the door being opened, the defendant, who was standing about ten steps from the door of the house, fired with her pistol three times in the direction of Sallie Williams.

The defendant's evidence tended to show that as she was coming by the house of Sallie Williams, Sallie Williams ran out of the house, and after accusing the defendant of having talked about her, struck the defendant two or three times; that Sallie Williams then ran into her house, and after throwing several bricks at the defendant, picked up an iron bar about two feet long and two inches wide, and just as she threw it at the defendant, the defendant fired twice at said Sallie Williams. This was all the evidence in the case.

The court, in its general charge, instructed the jury as follows: "Malice, as the word is used in courts of law, signifies a wrongful act done intentionally, without legal justification or excuse. The word, as commonly used in the every day affairs of life, has, I believe, the meaning of personal hatred, or ill will. This is something more than its meaning here. In this case, it signifies the formed design, on the part of the defendant to take the life of the deceased unlawfully, not in self-defense, and without such provocation allowed by the law to be used as would repel the imputation of malice. In other words, malice is criminal intention." To the giving of that part of the charge which was in these words: "In this case it signifies the formed design on the part of the defendant to take the life of the deceased unlawfully, not in self-defense, and without such provocation, allowed by law to be such as would repel the im-

putation of malice," the defendant excepted. And to the giving of that part of the charge which was in these words: "In other words, malice is criminal intention," the defendant excepted.

The court further instructed the jury, in its general charge, as follows: "Before the defendant in this case can set up the defense of self-defense, there must have been at the time a present, impending, imperious necessity to shoot." To the giving of this portion of the court's general charge the defendant duly excepted. The bill of exceptions, recites that "When this exception was taken the court explained to the jury before they retired that the necessity need not be real, but an apparent necessity to shoot was sufficient to enable the defendant to set up self-defense.

The defendant requested the court to give the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The defendant was under no duty to retreat, if she was assaulted by the deceased with a deadly weapon." (2.) "Under the evidence, the defendant can not be found guilty of murder in the first degree." (3.) "If you are reasonably doubtful as to the proof in this case of any material allegation of the indictment, you must acquit the defendant."

WILEY C. HILL, for appellant.—The motion to quash the venire and in arrest of judgment should have been granted.—*Hames v. State*, 113 Ala. 674.

The objections to the questions propounded to the witness Merriweather should have been sustained. They called for immaterial evidence.—*Green v. State*, 96 Ala. 29.

The third charge requested by the defendant should have been given.—*White v. The State*, 103 Ala. 72.

WILLIAM C. FITTS, Attorney-General, for the State.

BRICKELL, C. J.—The motion to quash the venire and in arrest of judgment were properly overruled. The question involved was fully considered in *Hurd v. State*, *ante*, p. 440, and the case, *Hames v. State*, 113 Ala. 674, relied on in support of the motions was explained and distinguished from this case.

The inquiry propounded to the witness Merriwether, as to his knowledge of the place where Sallie Williams (the person alleged to have been slain) was killed, was merely introductory to his further examination, in the course of which he testified that on the night of the killing he was sent for, and on reaching the house where the body of the deceased was lying—that he saw she had been shot through the head with a pistol—that he found two pistol balls lodged in the house, and an iron bar in front of the house. The materiality of this testimony was fully developed in the progress of the trial—in some respects, material to the defendant as well as to the prosecution. Questions of this character, if answered affirmatively, are often necessary, to show the opportunities of the witness to know the facts to which he may testify on further examination, and if answered negatively, they are harmless. The case to which we are referred in support of the objection (*Green v. State*, 96 Ala. 29), recognizes the propriety of such inquiry, when it is followed by or connected with material evidence of which it may be deemed introductory or explanatory. It was said by COLEMAN, J.: ''It is permissible, in fact, unavoidable, sometimes, to propound a question *prima facie* objectionable, when it is merely introductory to questions, necessary to elicit facts which are legal evidence. Whenever it is subsequently shown that the apparent illegal evidence is a connecting part of, or explanatory of legal evidence, and was only used as necessarily introductory thereto, an objection to it cannot be sustained.''—*Frazier v. State*, *ante*, p. 442.

The exceptions to the instructions given by the court *ex mero motu*, are wanting in merit. The first of these instructions, taken and construed in its entirety, as it must be, properly defines malice, the essential element of murder, as it is defined in the text books, and in repeated decisions of this court. A formed design, unlawfully, to do mischief or injury to another, is malice in its general acceptation. And as this instruction postulates, the formed design on the part of the defendant to take the life of the deceased, unlawfully, not in self-defense, without circumstances of provocation repelling the imputation of malice, is the ingredient of murder.

Necessity only, real or appearing to be real, justifies the taking of human life, and this is the substance of the

[Stoball v. The State.]

remaining instruction. When by an exception taken, the attention of the judge was directed to the omission to instruct that the necessity need not be real, that it was sufficient to justify, if it was apparent, it was a duty to cure the omission, and the curing of it could not by possibility be of injury to the defendant.

When an assault is made on a sudden quarrel, and a mutual combat ensues, as in the present case, though the assault may be made with a dangerous or deadly weapon, it is the duty of the assailed to retreat, that its threatened consequences may be avoided, if the circumstances are not such as to impress him with the reasonable belief that retreat would increase his peril. "For when it comes to a question whether one man shall flee or another shall live, the law decides that the former shall flee, rather than that the latter shall die." The first instruction requested by the defendant, was in direct contravention of this doctrine, so essential to the preservation of human life.

There was not a fact, or circumstance in evidence, having a tendency to reduce the killing to manslaughter in the second degree. Every fact in evidence tends to no other conclusion than that the killing was intentional. The instructions requested in reference to manslaughter in the second degree were abstract and properly refused. *De Arman v. State,* 71 Ala. 351; *Holley v. State,* 75 Ala. 14.

The remaining instruction seems to have been extracted literally from an instruction which was approved in *White v. State,* 103 Ala. 72. As applied to that case, and offenses of which there are not differing degrees, each of which is comprehended in the general allegations of the indictment, we do not doubt that the instruction is correct. But as applied to this case, and other offenses of which there are degrees, it is erroneous. It is true, in *White's Case,* there could have been a conviction of an attempt to commit bribery, the offense charged.—Cr. Code of 1886, § 4482. But the evidence had relation to a completed offense only, and did not necessitate any reference to a conviction for an attempt to commit it.

The material allegations of the present indictment, comprehend all the ingredients of murder in the first degree, and upon it there may be a conviction of either of the degrees of criminal homicide—murder in the first

[Thomas v. The State.]

degree, murder in the second degree, voluntary or involuntary manslaughter. A conviction of murder in the first degree could not be had, unless there was proof beyond a reasonable doubt of all the distinguishing characteristics of that offense as described in the statute. But without proof of these characteristics, there could have been a conviction of murder in the second degree, if the homicide was malicious. Or there could have been a conviction of manslaughter in either of its degrees. The least that can be said of the instruction, as applied to this and similar cases, is, that it is well calculated to mislead and confuse the jury, and contravenes the long line of decisions of this court, in cases of this character, that instructions predicated upon the insufficiency of evidence to justify a conviction of a higher degree of homicide, without regard to its sufficiency to justify a conviction of a lesser degree, are essentially erroneous.

We find no error in the record, and the judgment is affirmed.

Affirmed.


