# Ragland *v.* The State.

## *Indictment for Murder.*

1. *Drawing of special venire in capital case; presence of defendant not necessary.*—In a capital case, it is not necessary that the defendant should be present when a special venire is drawn for the trial of his case; and his absence at such time furnishes no ground for quashing the venire.

2. *Witness; can not be impeached by proof of immaterial facts.*—It is not competent for the purpose of laying a predicate to impeach a witness, to ask him about matters entirely immaterial and wholly irrelevant to any issues in the case.

3. *Same; question calling for competent and incompetent evidence properly disallowed.*—Where a question propounded to a witness calls for both competent and incompetent evidence, the court is not bound to separate the good from the bad; and it, therefore, commits no error in sustaining an objection to the entire question.

4. *Homicide; impeachment of witness; admissibility of evidence.* On a trial under an indictment for murder, where the testimony of a witness for the State tended to contradict the testimony of a witness for the defendant whose evidence was introduced under the plea of insanity, to show the state and condition of defendant's mind not long before the killing, it is competent for the defendant, on the cross examination of

[Ragland v. The State.]

said witness for the State, to ask him if he did not have a conversation with the defendant's witness a short time before the killing, in which the State's witness said that he saw there was something the matter with the defendant; such question being propounded for the purpose of laying a predicate to contradict the State's witness and to sustain the witness for the defendant.

5. *Witness; non-expert not competent to testify as to hypothetical state of facts.*—A non-expert witness can not give an opinion except it is derived from facts known to him and disclosed by him to the jury; and, therefore, a hypothetical state of facts is not a permissible basis for the opinion of an expert witness.

6. *Same; evidence of insanity by one who is not an expert.*—One who is not an expert, but who having known a person familiarly for a long time has had opportunities to form a correct opinion as to the mental condition of such person, is competent to testify that said person is of sound mind; but such non-expert is not competent to give an opinion as to the sanity of such person, without giving the facts and circumstances upon which he bases his opinion.

7. *Same; same; case at bar.*—On a trial under an indictment for murder, where the cause is tried upon the plea of not guilty by reason of the insanity of the defendant, and a witness testifies that he has known the defendant for thirty years and ever since he was a boy, and had seen and talked with him once or twice a week during that time, had met him at church and other public gatherings, and all of his testimony showed that he knew him well, it is competent for the State to ask said witness, whether or not, from his acquaintance with the defendant and his conversations with him, from his observation of him and what he had heard him say and seen him do, and the manner in which he acted, he was, in the opinion of the witness, of sound or unsound mind; and there is no error in allowing the witness to answer that the defendant was, in his opinion, of sound mind.

8. *Homicide; argument of counsel to jury.*—On a trial under an indictment for murder, where there was evidence tending to show that the defendant killed the deceased because he had seduced his daughter, of which fact he was made cognizant a few hours before, by a letter written by his daughter to her mother, and which was shown to him, while commenting on the letter of the defendant's daughter, it is not competent for the counsel for the State to argue before the jury that they should draw an unfavorable inference against the defendant

[Ragland v. The State.]

because h₃ did not bring his daughter into court and have
. er to testify that she was seduced by the deceased; the guilt
or innocence of the deceased of the improper relations with
the defendant's daughter not being a material question in the
case, her testimony as to the guilt of the deceased, even if
admissible, could add nothing to the fact of the information
imparted to the defendant by her letter.

9. *Pleading and practice; right of jury to carry court's written charge with them on retirement.*—Where the court, upon the request of the defendant, reduced its general charge to writing, it is not error to allow the jury to take said charge with them on their retirement.

10. *Homicide; whether there has been cooling time question of law to be determined by the court.*—On a trial under an indictment for murder, where the defense is that the defendant struck the fatal blow in the heat of passion naturally engendered by knowledge recently acquired of a great wrong done him or some member of his family, the question as to whether or not there had been sufficient cooling time after acquiring the knowledge of the killing, is a question of law to be determined by the court, and not of fact for the consideration of the jury. (*Hooks v. State*, 99 Ala. 166, overruled so far as it is in conflict with the rule here announced.)

11. *Homicide; charge as to manslaughter.*—On a trial under an indictment for murder, a charge asserts a correct proposition which instructs the jury that manslaughter in the first degree, as embraced in the indictment, "is the unlawful killing of a human being without malice—that is as the unpremeditated result of passion—heated blood caused by sudden sufficient provocation—and such provocation can in no case be less than an assault, either actually committed or threatened, under such pending circumstances as reasonably to convince the mind that the accused had cause for believing and did believe he would be presently assaulted, and struck in consequence of the passion suddenly aroused by the blow given or apparently about to be given."

12. *Same; same.*—On a trial under an indictment for murder, when the evidence set out in the bill of exceptions shows that the defendant, if guilty at all, is guilty of murder, there is no occasion for the court to charge upon the constituents of manslaughter in the case.

APPEAL from the City Court of Talladega.

Tried before the Hon. G. K. MILLER.

The appellant, Nathan Ragland, was indicted and

tried for the murder of Will Braxdall, was convicted of murder in the first degree and sentenced to be hanged. The trial was begun on October 31st, 1899. Before entering upon the trial on that day, the defendant moved the court in writing to quash the venire of the petit jury in said cause on the following grounds: "1. The defendant was not present at the time of drawing the special jury by the court which special jury forms a part of said venire. 2. The defendant was not in the court room at the time of the drawing of such special jury. 3. The regular jurors forming a part of said venire are not shown to have been drawn, but are shown to have been summoned by the sheriff without having been drawn. 4. Said regular jurors were not drawn. 5. Said cause was set for trial on a day of a week of the term of said court subsequent to the week in which said special jurors were drawn, and the regular jurors composing a part of said venire were not drawn and summoned for said subsequent week. 6. Said cause was set for a subsequent week of the term of said court to the week in which the said special jurors were drawn, and no regular jurors were or had been drawn and summoned for said subsequent week; and the jurors summoned as regular jurors by the sheriff were so summoned without having been drawn. 7. The said regular jurors were not drawn and summoned, and were not organized as the regular jury for the week during which such cause was set for trial as the regular jriy for such week."

The State admitted the truth of the allegations of fact in all the grounds of said motion except the allegation in the 7th ground that the regular jury for the week during which the cause was set for trial was not organized as the regular jury for such week. The court overruled the motion on all of the grounds, and the defendant then and there duly excepted. The defendant then made a written motion to quash the venire on the following grounds: "1. The venire served on the defendant does not contain the names of any regular jurors drawn and summoned; nor has a list of those regular jurors in attendance on the court as such been served on the defendant or his attorneys for the time required by law before

the day set for trial, towit, one entire day, for that said regular jurors have been in attendance as such only since, towit, October 30th, 1899, and this day October 31st, 1899, and no list has been served on the defendant since said regular jurors were drawn as such and have been in attendance on the court as such. 2. The regular jurors constitut'ng, towit, 30 names of the venire have been in attendance as such only since towit October 30th, 1899, and no list of the names of jurors has been served on the said defendant or his attorneys since the organization of said regular jurors nor since their attendance as such."

The State admitted all of the allegations of the last named motion to be true, whereupon the court overruled the said motion and the defendant then and there duly excepted. The defendant pleaded two pleas: 1st, "Not guilty;" and, 2d, "Not guilty by reason of insanity."

The State offered evidence showing that the defendant shot the deceased with a pistol late in the afternoon on the streets of Talladega; and that the deceased died from the effects of said shot.

The defendant offered evidence showing that he was struck a heavy blow upon the front part of the head over the left eye and about where the forehead and the hair meets, when he was a boy, which rendered him speechless and unconscious for a month or six weeks, and that since said injury the defendant at frequent intervals acted and spoke without reason, his eyes glaring and the expression of his face being abnormal, and that at such intervals the defendant was insane. The State admitted that the defendant would prove the above facts by H. C. Bingham, had he been present, and this admission was introduced in evidence. Several other witnesses testified in substance to the same facts.

The defendant introduced the following letter, which was shown to have been in the hand-writing of defendant's daughter, Lena, an unmarried girl, under 18 years of age, living, up to the date of the letter, with the defendant and her mother in the town of Talladega, and which was shown to have been read by the defendant at about 3 o'clock on the afternoon of the day of the kill-

ing, and that the defendant was first thereby informed of the seduction of his said daughter by the deceased: "Dear Mama:—When you read this I will be far away, for I know I can't live if I stay here. Mama don't have William hurt. It was not him. I call the angels in heaven to affirm what I say. It was that low down Will Braxdall. I hate him worse than any living person I know. No, you always had William accused wrong, and when you stopped him from coming William and I was to be married soon. That is what is killing me, because I love him better than life, but I let that low down dog make me do wrong, and only once. Next to the dearest wish I have is to see him dead. When I told him of it, he wanted to lay it on William. I know I went with William every chance I got, but it was because I love him and he loves me the same, he wouldn't say such a thing to me low down as you say he is. For God's sake believe me and let my darling be. Let my clothes all stay in my trunk. May be some day I will want them. Should you leave, leave them at Grandma's or somewhere I can get them if I ever want them. Remember wherever I go I love you and William as long as life lasts. Don't do anything to William. I would rather die myself than to have him hurt when he is clear. As for Will Braxdall, I don't care what happens to him. I hope to see your sweet face again some day. Good bye my own sweet mother. Lena."

The defendant offered the testimony of expert and other witnesses tending to show that since the blow upon his head he was insane, and subject to spells of recurrent manifestations of the insanity superinduced by the blow and frequently brought on by great exciting cause, and sometimes provoked by trivial irritating causes. The State introduced several witnesses who testified they had never seen any manifestations of insanity on the part of the defendant, and who also testified that his general character was bad; but that they had never heard his character for truth and veracity questioned.

The other facts of the case and the rulings of the court upon the evidence to which exceptions were reserved are sufficiently shown in the opinion. The circumstances

[Ragland v. The State.]

and the facts relating to the argument before the jury by counsel for the State are also sufficiently shown in the opinion.

The court was requested by the defendant, before the argument of the case was begun, to deliver his charge to the jury in writing, which he did, and his charge is contained in the bill of exceptions. As soon as the court had finished reading said written charge to the jury and defendant excepted to the said written charge as a whole, he then excepted to each sentence separately of the court's said written charge. He then excepted to that portion of the court's written charge which reads as follows: "Now applying this principle to the case at bar, the court charges you as a matter of law as applied to the facts of this case that the defendant did have cooling time, and that if he was sane at the time of the homicide, the offense, if any was committed, would not be manslaughter." Defendant also, then excepted to that portion of the court's written charge which reads as follows: "If it is shown that a person is insane only at intervals, his mind being lucid at all other times, if such person commits an act of criminal character, the presumption is that he committed it during a lucid interval and the burden is upon him to show that he committed it while insane." Defendant also then excepted to that portion of the court's written charge which reads as follows: "Manslaughter in the first degree as embraced in this indictment is the unlawful killing of a human being without malice—that is as the unpremeditated result of passion—heated blood caused by a sound, sufficient provocation—and such provocation can in no case be less than an assault, either actually committed or threatened, under such pending circumstances as reasonably to convince the mind that the accused had cause for believing and did believe that he would be presently assaulted, and struck in consequence of the passion suddenly aroused by the blow given, or apparently about to be given." Defendant, also, then excepted to that portion of the court's written charge which reads as follows: "Manslaughter in the second degree or where death is unintentionally caused by an unlawful (though not

felonious act) or by a lawful act done in an unlawful manner, and the burden rests upon the State in all criminal cases to establish the guilt of the defendant by the evidence beyond a reasonable doubt." Defendant also then excepted to that portion of the court's written charge which read as follows: "And such provocation can, in no case, be less than an assault, either actually committed or threatened, under such pending circumstances as reasonably to convince the mind that the accused had cause for believing and did believe that he would be presently assaulted, and struck in consequence of the passion suddenly aroused by the blow given, or apparently about to be given."

The court refused to give many charges requested by the defendant, but under the opinion it is unnecessary to set out these charges in detail.

BROWNE & DRYER, for appellant.—Under the provisions of section 5005 of Code of 1896, defendant's motion to quash the venire should have been granted. Section 5005 of the Criminal Code of 1896 provides that when a capital case is set for trial for "a day of the same week in which the special jurors are drawn, * * * the special jurors so drawn, together with the venire of petit jurors *organized* for the week shall constitute the venire from which the jury or jurors to try such case, or cases, shall be selected; and when the day set for the trial is a day of a subsequent week of the term, the special jurors so drawn, together with the jurors *drawn and summoned* for such subsequent week shall constitute such venire." By comparison this statute will be found to be entirely different from section 4173 of the Revised Code of 1867 and section 4834 of the Code of 1876. Prior to this statute, § 5005 of the Criminal Code of 1896, which was enacted February 28th, 1887, there was no statute providing, as does said section 5005, a different manner for the formation of venires in capital cases when the same was set for trial on a day of the same week in which the special jurors were drawn, and when the day set for the trial was a day of a subsequent week of the term. In the case of *Shelton v. The State,* 73 Ala. p. 5, the court

established a different manner by limiting the doctrine laid.

The present statute has been construed by this court to require the venire to consist of the persons whose names are drawn by the Judge, together with the panel of the petit jurors *organized* for the week, when the case is set for a day of the *same week* in which the special jurors are drawn, and to require the venire to consist of the persons so drawn by the Judge, together with the regular jurors *drawn and summoned* for the week containing the day set for the trial, when that day is in a subsequent week of the term to the week in which the special jurors were drawn.—*Breden v. The State,* 88 Ala. 20; *Watkins v. The State,* 89 Ala. 82; *Morrison v. The State,* 84 Ala. 405. The defendant was not present at the time of the drawing of the special jury by the court. In the case of *Hurd v. The State,* 116 Ala. 442, and *Stoball v. The State,* 116 Ala. 454, and *Frazier v. State,* 116 Ala 442, it is only held that it is not necessary that the record should show that the defendant was present at the time of the drawing of such special jurors by the court. It is certainly the undoubted right of every defendant to be present at each stage of a criminal procedure by which his liberty may be affected or his life may be put in jeopardy. In *Frazier's case, supra,* it was held that the question of the defendant not being present at the drawing of the special jurors should have been presented by bill of exceptions, and that the records need not affirmatively show his presence. See also *Hames v. The State,* 113 Ala. 674; *Sylvester v. The State,* 71 Ala. 23.

The State's witness, Sam Long, who testified on his direct examination that the defendant's general character was bad, was asked on his cross-examination by defendant's counsel, if he was friendly or unfriendly to the defendant and answered: "I don't know. I have never been very friendly with him." It was competent then for the defendant to ask this witness if he had not made a certain statement to counsel for defense at a certain time and place, which tended to show that the witness was unfriendly to the defendant; and the court

erred in sustaining the objection to the questions propounded. Anything which tended to throw light on this subject was competent and material to assist the jury in weighing his testimony.—*Jernigan v. Flowers,* 94 Ala. 508; *Suther v. State,* 118 Ala. 98; *Postal T. C. Co. v. Hulsey,* 115 Ala. 206; *Pollak v. Lambert,* 40 Ala. 210.

The defendant's acts, demeanor, appearance and declarations are competent on the question of insanity. *McLean v. State,* 16 Ala. 672; *McAllister v. State,* 17 Ala. 437.

The depositions of the learned experts in this case show there are cases on insanity such as are hypothesized in the question, and that all persons who "on account of a disease of the brain have not the will power or the volition to refrain from doing a wrong act" are insane. This doctrine was for a long while strenuously combatted by the courts; but the law has now almost universally yielded to science and that doctrine is well established. We need cite no other case on this subject than that of *Parsons v. State,* 81 Ala. 577.

The court erred in not interfering with the argument of the State's counsel to the jury, and in overruling the defendant's objections thereto. The remarks of the counsel were highly improper and damaging to the defendant. It must be regarded as a settled doctrine of this court that the failure of a defendant to call a witness, whatever may be the relations between them, who is equally accessible and equally under the legal control of either party, raises no presumption and is not a circumstance to be considered against him.—*Nelms v. Steiner,* 113 Ala. 576; *Crawford v. The State,* 112 Ala. 23; *Bates v. Morris,* 101 Ala. 287; *Haynes v. McRae,* 101 Ala. 318; *Pollak v. Harmond,* 94 Ala. 420.

Where there is no evidence of where the absent person was at the time of the trial, such person is considered as equally accessible and equally under the legal control of either party. Under such circumstances such argument made by counsel for the State in closing the case was highly prejudicial and of that character strongly condemned by this court.—*Hunley v. Chadwick,* 109 Ala. 575.

The court erred in permitting the jury, against defend·ant's objection, to take with them, when they retired to make up their verdict, the charge of the court reduced to writing on defendant's request. Especially was such action prejudicial to defendant in this case on account of the undue prominence given certain portions thereof by underscoring such parts.—Code of 1896, §§ 3328, 3329.

The court erred in not instructing the jury as to what constituted cooling time.—*Stillwell v. State,* 107 Ala. 21; Bishop New Crim. Law, §§ 710, 712; *Keiser v. Smith,* 71 Ala. 485; *Robinson v. State,* 108 Ala. 16.

CHAS. G. BROWN, Attorney-General, WHITSON & GRAHAM and ALEX M. GARBER, for the State.—The provisions of the Code of 1896, Chapter 166, in respect to juries apply to the trial of cases in the Talladega city court; it being provided by special act that such chapter shall govern and control in respect to juries in the trial of cases in such court. See amendment of section 6 of the Act creating the court.—Local Acts, 1898-99, p. 738.

The provisions of section 5005 are directory merely.—*Thompson v. State,* 122 Ala. 12; *Baker v. State,* 122 Ala. 1.

The fact that defendant was not present when the special jurors were drawn from the box makes no difference, for the simple reason that the law does not require it. His absence at such time furnishes no ground for quashing the venire, and it has several times been so held.—*Stoball v. State,* 116 Ala. 455; *Hurd v. State,* 116 Ala. 440; *Frazier v. State,* 116 Ala. 442; *Maxwell v. State,* 89 Ala. 150.

The rulings of the court upon the evidence tending to show insanity were free from error.—*State v. Shippey,* 88 Amer. Dec. 70; *Ford v. State,* 71 Ala. 387.

The rule is well settled that a witness can not be impeached by proof of previous contradictory statements, unless such statements relate to matters material to the issue.—*Steinhart v. Bell,* 80 Ala. 208; *Burney v. Torrey,* 100 Ala. 157; *Orr v. State,* 107 Ala. 38; Wharton's Crim. Evidence, § 434; *Hooper v. Birchfield,* 115 Ala.

226; *Henson v. State,* 120 Ala. 316; *Evans v. State,* 120 Ala. 216; Code of 1896, § 4333.

A non-expert who is shown to have an intimate acquaintance with the party whose sanity is in question can testify as to his opinion as to his sanity or insanity, or that he is of sound or unsound mind.—*Ford v. State,* 71 Ala. 386; *Bulyer v. Ross,* 98 Ala. 272, 273; *Norris v. State,* 16 Ala. 776; *Floyer's Excts. v. Florey,* 24 Ala. 241; *Powell v. State,* 25 Ala. 28; *Stubbs v. Houston,* 33 Ala. 555; *Burney v. Torrey,* 100 Ala. 173; *Yarbrough v. State,* 105 Ala. 54.

A witness who is not an expert can not give an opinion upon a hypothetical state of facts. Such an opinion would be the mere conclusion of the witness.—*Torrey v. Burney,* 113 Ala. 497; *Yarbrough v. State,* 105 Ala. 54; *Burney v. Torrey,* 100 Ala. 157; *Hooks v. State,* 99 Ala. 166; *McNeil v. State,* 102 Ala. 105; *Dabney v. State,* 113 Ala. 42; *State v. Harrell,* 10 Am. St. R. 294-295; *State v. John,* (5 Jones 163)·49 Am. Dec. 396; *Sawyer v. State,* 35 Ind. 80; *State v. Avery,* 64 N. C. 628.

It has long been held in this State that cooling time was a question of law for the Court. As said by Justice Haralson in *Stillwell v. State,* 107 Ala. 21: "What constitutes a sufficiency of cooling time is one for the court under the facts of the case and not for the jury;" citing, *Felix v. State,* 18 Ala. 724; *Keiser v. State,* 71 Ala. 482; *McNeil v. State,* 102 Ala. 127; 2 Bishop Criminal Law, Sec. 713.

No censorship is exercised by the court on the argument of counsel—"every inference counsel may think arises out of the testimony is a legitimate subject of criticism and discussion."—*Mitchell v. State,* 114 Ala. 5-6; *Cross v. State,* 68 Ala. 476; *Hobbs v. State,* 74 Ala. 41; *Green v. State,* 97 Ala. 60; *Billingsley v. State,* 96 Ala. 126; *McNeil v. State,* 102 Ala. 127.

HARALSON, J.—1. Chapter 166 of the Criminal Code, in which sections 4997, 4998, 5004 and 5005 are found, apply to the trial of criminal cases in the City Court of Talladega.—Acts, 1898-99, p. 738.

On the 5th day of October, 1899, the defendant was

brought before the court,—having, on the 11th of September previously, pleaded not guilty to the indictment, —and the trial of his cause was set for the 31st of October, 1899, in a week for which no petit jurors had been drawn by the jury commissioners.

The court, proceeding under section 4998 of the Code, ordered 30 qualified persons to be summoned to serve as jurors for the week in which the case was set for trial, and drew from the jury box under section 5004, the name of 40 others; making 70 jurors allowed for the trial. The 30 regular jurors were summoned, and were in attendance on the day of trial. A list of these, and the 40 special jurors, together with a copy of the indictment, were, according to the previous order of the court entered of record, served on the defendant, at a time more than one entire day set for the trial. We have examined the transcript in the cause, and are of the opinion, that the court proceeded regularly and legally to set down the day and in procuring a lawful jury for the trial. The fact that the defendant had been carried from the court house to the jail, at the time the special venire for his trial was drawn, and he was not actually present at the drawing by the court, was of no avail to quash the venire, as we have more than once decided.— *Stoball v. The State*, 116 Ala. 454; *Frazier v. The State, Ib.* 442; *Hurd v. The State, Ib.* 440. The motions to quash were properly overruled.

On the day of the trial, the defendant pleaded again, not guilty, and another plea, not guilty by reason of insanity.

2. Sam Long, examined by the State, testified, that defendant's general character was bad. Defendant's counsel asked the witness on the cross: "Are you friendly or unfriendly to the defendant?" to which he answered, "I don't know; I have never been very friendly with him." Counsel then asked the witness if he did not at a certain time and place say to him: "Mr. Browne, I bought that place from Mr. Joe Savery, that Browne & Dryer got from Nath Ragland and his wife on their fee in this case, and which they sold to Joe Savery, and they tell me if Nath ever gets out of jail, he can get the place

back, and I want to know if that is so?" This was laying a predicate evidently, to impeach the witness, if he denied the conversation. It was objected to, because it was about a matter entirely immaterial, and was incompetent. It needs no comment to show that the objection was properly sustained. Counsel then, as he declared, desired to show the unfriendliness of the witness towards defendant, and proposed to, ask him: "Did you not at such time and place say to me (Cecil Browne) in substance, that you had bought or were on a trade for a house and lot that Nath Ragland and his wife had sold to Browne & Dryer, and that you had been told, that if he got out of jail, he would get it back, and that you and he were unfriendly, and you were afraid if he got out he would get it back?" The solicitor objected on the same grounds as before. The part of this question, except "that you and he were unfriendly," was subject to the same objections as interposed to the previous question. The statement of the witness, when previously asked if he was friendly or unfriendly with defendant, —that, "I don't know; I have never been very friendly with him,"—was evasive, and not a statement that he was unfriendly to defendant. It was a statement, the rather, that he was not unfriendly, unless the fact that he was not very friendly with him, made him so. To show his true feelings towards defendant, it was permissible, therefore, to ask him if he had not previously stated to Mr. Browne, that he was unfriendly to defendant. But, the question contained, besides this, other matter inquired about which was improper, and the court was not bound to separate the good from the bad, sustaining the one and ruling out the other, and committed no error in sustaining the objections to the entire question.

3. One Prickett for the State, testified that he saw the defendant at the depot, about 4 or 5 o'clock in the afternoon of the day deceased was killed, talking with J. A. Bingham; that defendant's wife was with him; that he looked like he always did; did not cry, and there was nothing unusual about him to attract witness' attention; saw nothing like frenzy or furor, and that Mr.

Bingham left defendant and his wife and came to where witness was, some 25 feet away. Defendant asked the witness: "Did you not, when Mr. Bingham left Nath, after the conversation with him at the depot, and came to where you were, say to Mr. Bingham in substance, 'What is the matter with Nath?' and did not Mr. Bingham reply in substance, 'Nath says Will Braxdall has got his daughter big,'. and did you not reply in substance, 'I knew something was the matter, I saw he had the devil in him?' " Bingham had testified that defendant at this conversation was in a very excited state and crying. The testimony of Prickett tended to contradict Bingham, whose evidence was introduced under the plea of insanity, to show the state and condition of defendant's mind, not long before the killing. It is clear enough, that the witness, Prickett, had testified on this subject, to a different state of facts, than that deposed to by Bingham. The question propounded by counsel was for the purpose of laying a predicate to contradict Prickett, and to sustain the witness, Bingham, and should have been allowed to be answered.

4. The witness, Cruikshank, was asked by defendant: "Would you consider a man who knew the difference between right and wrong, but who, on account of a disease of the brain, congenital, hereditary or acquired, hadn't the will power or the volition to refrain from doing the wrong act, sane or insane?" This question was objected to by the State, on the ground, that the witness was not shown to be an expert, and was incompetent to answer such a question. "A non-expert witness cannot give an opinion except when it is derived from facts known to him and disclosed by him to the jury. A hypothetical state of facts is, therefore, not an allowable basis for the opinion of a non-expert."—*Burney v. Torrey,* 100 Ala. 157; *Yarbrough v. The State,* 105 Ala. 54, 55.

This witness stated that he had known the defendant for 30 years—ever since he was a boy—and had seen and talked with him during that time, once or twice a week; that he had worked with the defendant; had met him at church and other public gatherings, and showed

that he knew him well. The State asked him the question:
"From your acquaintance with the defendant, and con-
versations with him, and from your observation of him,
and what you heard and saw him say and do, and the
manner in which he acted, was he or not, in your opin-
ion, sane or insane, of sound or unsound mind?"   A
non-expert witness, who is shown to have the acquaint-
ance that this one had with defendant, can testify as to
his opinion of his sanity or insanity, or that he is or
sound or unsound mind.   That he may so testify, is no
longer open for discussion.   There was no error, there-
fore, in allowing him to answer, that defendant was in
his opinion of sound mind.   The question was sufficient-
ly definite as to time, and if defendant apprehended in-
jury as to that matter, he had the opportunity of right-
ing it, on the cross-examination.—*Stubbs v. Houston,*
33 Ala. 555; *Yarbrough v. State, supra.*   What is said
as to this witness, applies to the admissibility of the evi-
dence to the same effect, of many other witnesses, ex-
cepted to and admitted by the court.

5.   The letter of Lena, the daughter of defendant, set
out in the record, was admitted in evidence very clearly,
under the plea of "not guilty by reason of the insanity
of defendant."   The court, during the progress of the
trial, announced, when evidence was offered calling for
the ruling, and very properly we think under the facts of
the case, that the guilt or innocence of the deceased of
improper relations with defendants' daughter, was not
a material question in the case, and declined to allow
any testimony as to the innocence of deceased.   In the
closing argument of counsel for the State, while com-
menting on and discussing the letter of Lena Ragland,
he argued to the jury, that they could and should draw
unfavorable inferences against defendant because he had
not brought Lena and put her on the witness stand,
there to testify, that deceased had seduced her.   To
this course of argument defendant's counsel objected,
and moved the court that such argument be not allowed
before the jury.   Counsel making the argument, con-
tended that it was proper, and the court overruled de-
fendant's objection and allowed the State's counsel to

[Ragland v. The State.]

proceed with such argument, to which the defendant excepted. It is very clear, that under he facts of the case, and under the plea of not guilty, the guilt or innocence of deceased in the seduction of defendant's daughter was not an issuable fact. If Lena had been present, the State would not have introduced her for the purposes stated, nor would it have been allowable for defendant to have done so. It is equally clear, that the information received at the hour it was, by defendant, through his daughter's letter, whether she told the truth or not, —that deceased had seduced her,—was competent evidence to be considered with all the other evidence in the case, as bearing on the plea of insanity. Her presence and swearing to the guilt of deceased, could have added nothing to the force or effect of the information imparted to defendant by her letter. The argument indulged by counsel should not have been permitted, and the court erred in not suppressing it.

6. There was no error in allowing the general charge of the court,—written on the requirement of defendant under the statute,—to be taken out by the jury on their retirement. The statute provides, that charges given must be taken by the jury with them on retirement. This applies as well to the general charge when in writing, moved for by either party, as to written charges asked for by either when given. It would seem one of the purposes defendant had in requiring the main charge to be in writing was, that the jury might have it before them on their retirement.—Code, §§ 3327, 3328.

7. The court in its general charge stated, that, "Applying these principles [which he had been laying down as to the crime of murder] to the case at bar, the court charges you as a matter of law, as applied to the facts of this case, that the defendant did have cooling time, and that if he was sane at the time of the homicide, the offense, if any was committed, would not be manslaughter but murder."

In *Keiser v. Smith*, 71 Ala. 485, this court said: "The criterion (whether the blood had time to cool) is not alone how many days or hours had elapsed since the provocation was given, although this consideration is of

vast significance in ascertaining the main inquiry. (Cit-
ing  *Dolan v. Fagan,* 63 Barb. (N. Y.) 73; 1 Water.
Tresp. § 268; 1 Hilliard on Torts (4th ed.), 197, n. b.)
What constitutes a sufficiency of cooling time, or of
provocation, is necessarily a question of law, and not of
fact; the court being required to decide it preliminarily
to the admission or exclusion of evidence offered in miti-
gation, analogous to the rule governing in cases of homi-
cide."—2 Bish. Cr. Law, §§  712, 713, and authorities
cited; *Felix v. The State,* 18 Ala. 720; *Stillwell v. The
State,* 107 Ala. 210.  If the defendant had shot the de-
ceased "immediately upon hearing of the wrong to his
daughter, and in the heat of passion engendered by the
fact coming to his knowledge, all the facts would have
been admissible to eliminate the element of malice from
the act, by referring it to passion which had not hau
time to cool, thus reducing the homicide [under the plea
of not guilty] to manslaughter."—*Rogers v. The State,*
117 Ala. 14; *Robinson v. The State,* 108 Ala. 16; *McNeill
v. State,* 102 Ala. 126; *Hooks v. The State,* 99 Ala. 166.
In the last cited case, appears the expression, to the ef-
fect, that cooling time is a question of fact for the deter-
mination of the jury.  This is contrary to the generally
received doctrine on the subject, and to that extent that
decision must be disapproved.

In this case the defendant's testimony showed that he
first saw his daughter's letter about 3 o'clock in the after-
noon, and this was the first time he had heard of her
alleged seduction.  He further testified, that it was al-
most dark when he shot the deceased.  The weight of
the testimony is, that the shooting occurred not far
from 7 o'clock in the evening.  One witness fixes the pre-
cise number of minutes after seven when it occurred.
Defendant further testified, that after his wife showed
him the letter, he and she went to town from where they
lived, at Knoxville, and saw deceased and showed him
the letter and asked him what he was going to do about
it; that deceased held the letter in his hand trembling,
for 15 or 20 minutes, and said he did not understand it,
when defendant told him, "You see what Lena says,"
when deceased said, "It might have been somebody else,"

and asked what are you going to do about it, and defendant told him he would have to marry her, and deceased said, he would not do so; that he then left, and went to Knoxville, to look for Lena, at her grandmother's, and returned to the Southern depot, and met with J. A. Bingham; that he came on back and passed on the opposite of the street from deceased, and when opposite to him, he folded his arms and looked at him for five minutes; then went to Chambers' bar and took part of a drink, and came back to the shop of deceased and shot him; that he did not know how many times he shot, but did know he went there to shoot him; that after he saw deceased the first time, he got the pistol he shot him with from one Hedden, and gave him his watch and chain; that he told Chambers, when he took the drink, he was going to do something he did not like to do; that he met Bowie after the shooting, who asked him whom he had shot, and he told him that s—of a b—, Will Braxdall, and that he was looking for him and shot him as soon as he discovered him. The other evidence showed that deceased was unarmed, sitting in an arm chair, with one leg over one of its arms, when defendant walked up, and shot him, first, in the chair, and twice after he had fallen out. On this state of uncontradicted evidence, there was no error in the charge of the court to which exception was taken, that defendant had cooling time after hearing of the alleged seduction of his daughter by deceased, and that if he was sane at the time of the homicide, the offense would not be manslaughter but murder.

8. The part of the general charge of the court on the subject, was a correct definition of manslaughter as defined in the same words in *Mitchell v. The State,* 61 Ala. 32. But whether the charge was correct in this respect or not, could have made no difference. There was no occasion for the court to charge on the constituents of manslaughter in the case, since the evidence set out in the bill of exceptions shows, that defendant, if guilty at all, was guilty of murder.—*Pierson v. The State,* 99 Ala. 148; *Compton v. The State,* 110 Ala. 35; *Dennis v. The State,* 112 Ala. 66.

9. The defendant requested 69 written charges, 21 of

which were refused and 48 given. We have examined those refused, and find they were either illegal, argumentative and misleading or substantial duplicates of some of the ones which were given. There was no reversible error in the court's refusal to give them.

For the errors indicated, the judgment and sentence of the lower court will be reversed and annulled, and the cause remanded.