(79 South. 678)

NULL v. STATE.   (8 Div. 580.)

(Court of Appeals of Alabama.   June 11, 1918.)

1. CRIMINAL LAW ⟨=⟩1129(1) — APPEAL AND ERROR—ASSIGNMENTS OF ERROR—PRACTICE.

While assignments of error are not required in criminal cases, yet they are permissible, and practice of assigning errors is to be commended.

2. CRIMINAL LAW ⟨=⟩473—EVIDENCE—ADMISSIBILITY—EXPERT TESTIMONY.

In a murder case, evidence of a qualified expert as to the condition of the body of deceased, as shown by a post mortem examination, held properly admitted.

3. CRIMINAL LAW ⟨=⟩693—OBJECTIONS TO EVIDENCE—TIME OF MAKING.

Objections not interposed to questions propounded nor to the answers elicited until after the answers were given came to late.

4. HOMICIDE ⟨=⟩268—TRIAL—DIRECTED VERDICT.

In a murder trial, where there was evidence of defendant's ill will and threats, and of his beating the deceased child with a leather strap, as well as other evidence affording an inference of his guilt, if believed by the jury, it was proper for the court to refuse to direct a verdict for defendant.

5. CRIMINAL LAW ⟨=⟩795(4)—DEGREE OF OFFENSE—INSTRUCTIONS.

A charge that if the jury were reasonably doubtful of the proof as to any material allegation of the indictment, they must acquit the defendant is bad, when applied to an offense of which there are different degrees.

6. CRIMINAL LAW ⟨=⟩823(2) — APPEAL — INSTRUCTIONS—WITHDRAWAL.

Where the court in a murder trial inadvertently and erroneously gave an oral instruction which might be taken to be upon the effect of the evidence, and this instruction was promptly with-

drawn, and proper instructions were substituted, the error was harmless.

**7. HOMICIDE ⬤➡169(1)—EVIDENCE—ADMISSIBILITY.**

In trial of defendant for the murder of a child by alleged beating, evidence that the child had been beaten by its mother without fixing the time of such beating was clearly immaterial and irrelevant.

**8. CRIMINAL LAW ⬤➡451(4)—EVIDENCE—CONCLUSION OF WITNESS.**

In the trial of defendant for the murder of a child by alleged beating, it was proper to sustain objection to a question calling for the conclusion of a witness as to his having seen the mother of the child beating it unmercifully.

**9. HOMICIDE ⬤➡142(1) — ISSUES — EVIDENCE —ADMISSIBILITY.**

In the trial for the murder of defendant's stepdaughter where the indictment charged him with accelerating her death, that fact was for the jury to determine from his acts, and evidence of the stepmother's whipping the child was not material.

**10. CRIMINAL LAW ⬤➡1170(3)—APPEAL AND ERROR—HARMLESS ERROR.**

In a criminal case, the exclusion of testimony, if error, was harmless, where defendant was afterwards permitted to testify to such facts, as were also other witnesses.

**11. CRIMINAL LAW ⬤➡1170½(1) — HARMLESS ERROR—EVIDENCE—SUGGESTING TO WITNESS —EXHIBITION OF WEAPON.**

In trial for the murder of defendant's stepdaughter by alleged beating with a strap, the exhibition of the strap by the solicitor to a witness with the question, "Is this the kind of strap it was?" was a suggestive mode of questioning not to be commended, but the matter was within the discretion of the court, and was not of such prejudicial nature as to avail defendant on appeal.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

John Null was convicted of murder in the second degree, and he appeals. Affirmed.

R. T. Simpson, of Florence, for appellant. F. Loyd Tate, Atty. Gen., and Emmett S. Thigpen, Asst. Atty. Gen., for the State.

BRICKEN, J. The defendant was tried upon an indictment charging him with murder in the first degree, was convicted of murder in the second degree, and sentenced to 12 years' imprisonment in the penitentiary.

The deceased, Annie Butler, was a child 6 years of age, and was the stepdaughter of the defendant, he having married the child's mother some six months prior to the alleged commission of the offense. The child died on a Sunday night in April, 1917, and it is insisted by the state, the indictment so charging, that her death was caused by the defendant having beat her with a leather strap, or that her death was accelerated by this means, or that the immediate cause of her death was shock, the result of such beating by the defendant.

[1] Errors are assigned by appellant's counsel; and, while this is not required in criminal cases, it is nevertheless permissible, and the writer has no hesitancy in stating that it is a good practice and a wise one, for by this means the errors complained of and insisted upon are brought specifically to the attention of this court, and the assignments of error need not, and do not, militate against a compliance by this court with the statute, which requires that the court must consider all questions apparent on the record or reserved by the bill of exceptions, and must render such judgment as the law demands, etc.

The errors complained of in the instant case relate to the rulings of the court on the admissibility of the testimony, and to a portion of the oral charge of the court, and to the action of the court in refusing certain written charges requested by defendant.

[2, 3] The state offered as its first witness Dr. R. L. Penn, a practicing physician of many years' standing, and his evidence tended to show: That the body of the deceased had been exhumed, and that he held a post mortem examination of the remains before appreciable decomposition had set in. That there were bruises on the forehead, but there was no fracture of the bones, and that the skull was not fractured. That there were bruises on the body and the skin showed some superficial injuries. That upon opening the body he found that the kidney was stuck to the wall of the stomach, and the lining of the liver was inflamed, and that the gall bladder had been ruptured and the bile had run out into the intestines as a result of this rupture, and that the appearance of the intestines showed anæmia, which was indicated by the fat being pale instead of yellow. That the gall bladder is a reservoir for the bile below the liver, and is the secretory function of the liver; and, further, that if the gall bladder was bruised or ruptured, it would drain out the bile, and that would set up inflammation, which brings about peritonitis, which would cause death. That there were marks of violence on the child, as indicated by blue places, marks, or stripes on the child's body and bruised places across its back, in the region of the costal cartilage behind which the gall bladder is located, and also on its forehead and on the lower bowels. The stripes were 4 or 5 inches long to 1½ inches wide. That "the child died from shock, and the anæmic condition, plus shock and fear of constraint." And over the objection of the defendant this witness testified that it was possible for the gall bladder to be burst by a stroke just over it, and that with the condition the deceased was in, the gall bladder being enlarged and the liver adhered, a lick struck over the gall bladder with an instrument or weapon of any kind, or with a heavy leather strap, it is possible that the gall bladder would burst, etc. On cross-examination he testified that it would take some time for death to occur when superinduced by a lick on the posterior portion of the body which burst the gall blad-

der, and that the infliction of this character of wound on the evening, before the death of the child that night would not of itself have caused its death, etc. Dr. Penn had qualified as an expert, and the rulings of the court on the testimony of this witness were clearly free from error. In some instances, no objection was interposed to the questions propounded to the witness nor to the answers elicited thereby until after the questions had been asked and answers given. These objections came too late.

[4] There was evidence offered by the state tending to show ill will and threats on the part of the defendant towards deceased, and also as to the beating of the child by the defendant with a leather strap and otherwise, on different occasions, the tendency of which, if believed by the jury, afforded an inference of his guilt, and was therefore properly submitted to the jury for its consideration. It follows that there was no error in the refusal of charge 29, which is as follows:

"If you believe the evidence, you cannot find the defendant guilty of murder in either degree."

[5, 6] Charge 4 refused to the defendant was as follows:

"(4) I charge you, gentlemen of the jury, that if you are reasonably doubtful of the proof in this case as to any material allegation of the indictment, you must acquit the defendant."

This charge is bad when applied to a charge of murder or other offenses of which there are different degrees. It has been expressly condemned as applied to cases of this character many times by this court and by the Supreme Court. Lacey v. State, 13 Ala. App. 212, 242, 68 South. 706; May v. State, 79 South. 677;[1] Littleton v. State, 128 Ala. 31, 39, 29 South. 390; Stoball v. State, 116 Ala. 454, 23 South. 162. There is no merit in the exceptions reserved to certain portions of the oral charge of the court, as it is disclosed upon examination that the only objectionable part of the oral charge of the court was the excerpt, which may have been taken as a charge upon the effect of the evidence, and this was promptly withdrawn from the consideration of the jury, and proper instructions in this connection were substituted therefor. It is clearly apparent that this action of the court cured whatever error, if any, had been committed. Underhill on Cr. Ev. p. 215. In this connection, this eminent writer has said:

"The credibility and weight of evidence are for the jury exclusively. All judicial observations or remarks upon the personal character of a witness or the nature, credibility, or weight of his evidence, made during his examination, are improper, and furnish grounds for objection. It is immaterial that the judicial observations were inadvertently made if the accused was substantial-

ly prejudiced, though it seems that the error may be cured by a prompt withdrawal or retraction of the objectionable words, or by an instruction to the jury to disregard them."

[7-9] There was no error in the ruling of the court in sustaining the state's objection to the questions propounded to the witness Sam Simpson. The first question to which objection was sustained is, "Have you seen Mrs. Null beat the child unmercifully?" This question was objectionable, in that no time was fixed in which the beating inquired about occurred, and it therefore called for immaterial and irrelevant testimony; furthermore, the question called for a mere conclusion of the witness as to the extent of the beating, and was objectionable also for this reason. Objections to the other questions propounded to this witness were likewise properly sustained, for the reason that the alleged whippings inquired about by Mrs. Null were not brought within the time, under the testimony of Dr. Penn, to make them material. Furthermore, it was immaterial as to whether Mrs. Null had also whipped the child, as this defendant was charged, among other things, with the offense of having accelerated the death of the child, and under the evidence in this case, this was a question for the jury to decide.

[10] Moreover, the benefit of this evidence was afterwards afforded the defendant by the testimony of the defendant himself and also of other witnesses examined upon the trial of this cause.

[11] There was no error of a reversible nature in the action of the court in permitting the solicitor to exhibit a leather strap to witness Clemons, and in asking the witness, "Is this the kind of strap it was?" To say the most, this was only a suggestive mode of questioning the witness, and is not to be commended; still it is always within the sound discretion of the court, and, unless it appears that manifest error of a prejudicial nature resulted from such examination, it cannot avail the defendant on appeal.

Furthermore, the objection came too late, as the question was propounded to the witness, and the answer thereto was responsive to the question, and no objection was interposed by the defendant until after the witness had answered the question.

This appeal has been considered by the court sitting en banc, and the conclusion is reached that no error appears in the record or is reserved in the bill of exceptions which was prejudicial to the defendant or affected his substantial rights, and the judgment of conviction is accordingly affirmed.

Affirmed.

[1] Ante, p. 541.