# Rogers *v.* The State.

### *Indictment for Murder.*

1. *Homicide ; evidence of ill treatment to defendant's daughter several days before the homicide inadmissible.*—On a trial under an indictment for murder, the facts that the deceased, a boy 16 years of age, carried the daughter of the defendant, a girl 13 or 14 years of age, from her home to a distant town, three or four days before the homicide, under a promise of marriage ; that he did not marry her, but left her at the

[Rogers v. The State.]

distant town and returned to her home two days before the shooting, can neither justify nor palliate the defendant's act in killing the deceased, nor shed any legitimate light on the transaction; it affirmatively appearing that the defendant came to the knowledge of all of such facts two days before the shooting occurred; and evidence of such facts is inadmissible.—(*Flanagan v. The State*, 46 Ala. 708, in so far as it is in conflict with the principle here announced, overruled.)

2. *Same; when charges as to the law of manslaughter inappropriate.* On a trial under an indictment for murder, where the evidence shows that the homicide was either murder or was justified on the ground of self-defense, it is not improper for the court to refuse to instruct the jury upon the law of manslaughter.

3. *General charge of the court to the jury.*—Where, in the trial of a criminal case, a charge given *ex mero motu* by the court, when considered as a whole is not only free from error but from any misleading tendencies, any exceptions reserved to certain sentences or segregated parts of the charge are without merit.

4. *Homicide; when charges relating to insanity of defendant properly refused.*—Where, on a trial under an indictment for murder, the defendant pleads not guilty "and not guilty by reason of insanity," but there is no evidence adduced in support of the plea of insanity, it is proper for the court to refuse charges requested by the defendant relating to the law of insanity.

5. *Same; reasonable doubt as to whether defendant acted in self-defense; charge to the jury.*—On a trial under an indictment for murder, where the defendant sets up self-defense, a charge which instructs the jury that "if they have a reasonable doubt, generated by all the evidence in this case, as to whether the defendant acted in self-defense or not, they should acquit him," is properly refused, in that it fails to set forth the constituents of self-defense.

6. *Same; sufficiency of evidence; charge to the jury.*—On a trial under an indictment for murder, a charge which instructs the jury that "Before they can convict the defendant, as charged in the indictment, each juror should be convinced beyond all reasonable doubt and to a moral certainty of his guilt, from the evidence and the evidence alone," asserts a correct proposition of law, and the refusal to give such charge requested by the defendant is erroneous.

7. *Same; charges ignoring certain tendencies of the evidence.*—A charge requested by the defendant in a criminal case, which ignores material evidence tending to prove his guilt, is properly refused.

8. *Same; charge as to the bringing on difficulty.*—On a trial under an indictment for murder, where it was open for the jury to conclude from the evidence before them that the defendant contributed to bringing on the difficulty by the manner of his approach and his threatening attitude towards the defendant, a charge is erroneous which instructs the jury, that if they believe from the evidence that the defendant did not go to the deceased "for the purpose of bringing on a difficulty with the deceased, and if the deceased partly turned

[Rogers v. The State.]

towards the defendant and put his right hand towards his hip pocket, as if to draw a pistol, and such conduct on the part of the deceased was calculated to impress the mind of a reasonable man, and did so impress the mind of the defendant, with the reasonable belief that at the time of firing the fatal shot he, the defendant, was in imminent danger of his life or of great bodily harm, and that he could not safely retreat, then the defendant would be justified in defending himself even to the taking of the life of the deceased, although it may appear after the homicide that the deceased had no pistol, and that the defendant was, at the time of the homicide, in no real danger."

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

The appellant was indicted and tried for the murder of Tom Hale, was convicted of murder in the second degree, and sentenced to the penitentiary for 15 years.

The trial was had upon issue joined upon the pleas of not guilty and "not guilty by reason of insanity." The evidence for the State tended to show that on the day of the killing, which was Thursday, about 6 o'clock, A. M., while the deceased was sitting on the porch of the house of one Marinda Patterson with several other people, the defendant came around the house with his gun in his hand, pointing it at the deceased, and when within 4 or 5 feet from him, he fired, the load taking effect in the deceased's body, from which wound he died in about eight hours ; that there was nothing said by the defendant to the deceased until after he had fallen from the gun shot wound ; that as he lay upon the ground the defendant walked up to him, and holding the gun by the muzzle in a manner as if to strike him, asked the deceased, "What made you run away with my girl, why didn't you ask me for my girl?" To these inquiries the deceased replied, "She would not let me."

The defendant as a witness in his own behalf, testified that he was the father of Emma Rogers, a girl about 13 years old ; that Tom Hale, the deceased, carried her to church on Sunday night before the homicide, and had never brought her back ; that he returned to Gadsden Tuesday evening, and that some of his children told him that said Hale was back and had a gun, and had said that if he, the defendant, asked him anything about Emma, he was going to kill him ; that on the morning of the killing he saw the deceased at Marinda Patter-

son's house, and that upon going up to where he was sitting on the front porch, he asked him where was his daughter, to which he made no reply; that he then asked him, why he had carried her off, and that to this inquiry the deceased said he carried her off because he wanted to, and then threw his hand back to his hip pocket, whereupon the defendant shot him.

Upon the introduction of Emma Rogers, the daughter of the defendant, she was asked the following question: "Did Hale, the deceased, take you from church Sunday night previous to the killing?" To this question the State objected, the court sustained the objection, and the defendant duly excepted. The defendant's counsel then stated to the court that they expected to prove by the witness in reply to said question that Tom Hale, the deceased, had carried her from the church on the Sunday night next before the killing to the house of one Mary Byers, a kinswoman of the deceased, and that during the night, some time between midnight and day, he induced the witness, under promise of marriage, to go with him to Ashville, Ala., and stopped at the house of Ellen Byers, a sister of deceased; that they went to Ashville on foot, arriving there about noon on the next day; that the deceased and witness stayed at his sister's, Ellen Byer's, for a day and night, when deceased left Tuesday and returned to Gadsden, Ala., leaving witness in Ashville, not having married her or even offered to marry her. Counsel further stated that they expected to show that these facts were communicated to defendant a short time before the homicide.

Upon the introduction of all the evidence, the court, at the request of the defendant, gave his general charge to the jury in writing. This charge is set forth at length in the bill of exceptions, but it is unnecessary to set it out in this statement of facts. The defendant duly and severally excepted to several portions of the court's general charge, and then asked the court to give to the jury the several written charges requested by him. The first and second of these charges relate to the question of insanity, and under the opinion on this appeal, it is unnecessary to set them out at length. The other charges asked by the defendant, to the refusal to give each of which the defendant separately excepted, were the following: (3.) "The court charges the jury that

if they have a reasonable doubt generated by all the evidence in this case as to whether the defendant acted in self-defense or not, then they should acquit him.''   (4.) ''The court charges the jury that before they can convict the defendant as charged in the indictment, each juror should be convinced beyond all reasonable doubt and to a moral certainty of his guilt from the evidence, and the evidence alone.''   (5.)  ''The court charges the jury that if they believe from the evidence that defendant did not bring on the difficulty, and that the deceased was a man of bad character, and had made threats against the defendant, and such threats had been communicated to him before the homicide, and then started off and turned partly around towards the defendant and put his right hand around as if attempting to reach the hip pocket of his pants, and that such action of the deceased was calculated to produce in the mind of a reasonable person, and did produce in the mind of the defendant, the honest belief that he was in pressing and imminent danger of his life or of great bodily·harm, and the defendant could not safely retreat, then the defendant would have the right to strike in his·own defense ; and where threats have been made and·communicated the defendant would have the right to anticipate the deceased, and shoot sooner than he would have the right to do in case there had been no threats communicated.''   (6.) ''The court charges the jury that if they believe from the evidence that the defendant went to inquire where his daughter was and not for the purpose of bringing on a difficulty with the deceased, and if the deceased partly turned towards the defendant and put his right hand towards his hip pocket, as if to draw a pistol, and such conduct on the part of the deceased was calculated to impress the mind of a reasonable man, and did so impress the mind of the defendant, with the reasonable belief that at the time of firing the fatal shot he, the defendant, was in imminent danger of his life or of great bodily harm, and that he could not safely retreat, then the defendant would be justified in defending himself even to the taking of the life of the deceased, although it may appear after the homicide that the deceased had no pistol, and that defendant was at the time of the homicide in no real danger.''   (7.) ''The court charges the jury that before the jury can convict the defendant

they must be satisfied to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and unless the jury are so convinced by the evidence of defendant's guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, then they must find the defendant not guilty."

AIKEN & MARTIN and N. G. CANNING, for appellant, cited *Domingus v. State*, 94 Ala. 9; *Hornsby v. State*, 94 Ala. 55; *Burton v. State*, 107 Ala. 108; *DeArman v. State*, 71 Ala. 351; *Compton v. State*, 110 Ala. 24; *Flanagan v. State*, 46 Ala. 703; *Davis v. United States*, 160 U. S. 469; *Brown v. State*, 108 Ala. 20.

WILLIAM C. FITTS, Attorney-General, for the State, cited *Goldsmith v. State*, 105 Ala. 8; *Allen v. State*, 111 Ala. 81.

McCLELLAN, J.—The facts that the deceased, a boy sixteen years of age, carried the daughter of defendant, a girl of thirteen or fourteen years, from Gadsden to Ashville, three or four days before the homicide under a promise of marriage, that he did not marry her, and that leaving her at Ashville he returned to Gadsden two days before the shooting, can neither justify nor palliate the defendant's act in killing him nor shed any legitimate light on the transaction. And this would be true even had his wrong been more aggravated—even had he debauched the girl, of which there is no pretence. In such case if the mortal blow had been given by the father immediately upon hearing of the wrong to his daughter, and in the heat of passion engendered by the fact coming to his knowledge, all the facts would have been admissible to eliminate the element of malice from the act by referring it to passion which had not had time to cool, and thus reducing the homicide to manslaughter. But there is no pretence that the homicide was committed under these circumstances : to the contrary, it affirmatively appears that the defendant came to a knowledge of all the facts—as full knowledge as he had at the time he shot deceased—two days before the shooting occurred. This court is firmly committed to

[Rogers v. The State.]

this view in consonance with long established principles ; and we take this occasion to utterly repudiate what is said in the case of *Flanagan v. State*, 46 Ala. 703, to the contrary ; and on the point under consideration that case is overruled.—*Robinson v. State*, 108 Ala. 14. The trial court did not err, therefore, in its rulings on the proposed evidence of the witness Emma Rogers.

The homicide involved here was either murder or justified on the ground of self-defense. There was no occasion for the court to give the law of manslaughter in charge to the jury.

It is most clear to our minds that the charge given *ex mero motu* by the court, considered as it must be as a whole, was not only free from error but free from any misleading tendencies. The several exceptions reserved to certain sentences or parts of sentences of the charge are without merit.

There was no evidence adduced in support of defendant's plea of insanity, and the court properly refused charges requested by defendant on this subject.

Charge 3 was bad for the reason given in *Miller v. State*, 107 Ala. 40.

Charge 4 correctly states the law. We do not find that it was substantially given in any of the other charges given to the jury by the court at the request of the defendant.

Charge 5 requested by defendant is elliptical, and its refusal may well be rested on this ground.

Defendant may not have gone to the scene of the homicide with the purpose of bringing on a difficulty, and yet it was open to the jury to conclude from the evidence before them that he did contribute to bring on the difficulty—if indeed there was any difficulty so far as action or words on the part of deceased were necessary thereto—by the manner of his approach, stealthily, it would seem, and in most threatening attitude.

Charge 6 refused to defendant would have deprived the jury of the right to reach this conclusion.

Charge 7 requested by defendant has been condemned by this court : it is a mere argument.

The judgment of the circuit court is reversed, and the cause remanded.