# Jimmerson *v.* The State.

### *Indictment for Murder.*

1. *Organization of jury; effect of court putting back in jury box the names of jurors drawn for special venires.*—While it is improper for the court, after drawing special venires from the jury box for the trial of capital cases to replace in the jury box the names of the jurors so drawn, still if it appears subsequently in the drawing of a special venire for the trial of another capital case, that no one of the persons drawn on

[Jimmerson v. The State.]

the previous venires were drawn to try such later case, the improper action of the court in returning to the box the names of the jurors drawn on the previous venires did not deprive the defendant, who was subsequently to be tried, of any legal right, nor did he suffer any special injury by such unlawful act on the part of the court; and, therefore, a motion to quash the special venire subsequently drawn is properly overruled.

2. *Homicide; admissibility in evidence of facts relating to previous difficulty.*—On a trial under an indictment for murder, testimony as to particulars of a former difficulty and relating to occurrences happening to the deceased and the defendant some two months prior to the homicide, and which have no immediate connection with the fatal attack by the defendant on the deceased, is irrelevant, immaterial, incompetent, and inadmissible in evidence.

3. *Same; admissibility of evidence.*—On a trial under an indictment for murder, where there was evidence tending to show that the deceased had had improper and illicit relations with the defendant's wife, upon the cross examination of the defendant as a witness, a question by the solicitor if he had not heard that the deceased was about to move from the neighborhood is not subject to the objection that the evidence sought to be adduced thereby was immaterial and irrelevant.

4. *Same; evidence as to character of deceased.*—On a trial under an indictment for murder, where the character of the deceased had not been assailed by the defendant, it is not competent for the State to introduce evidence to show that the character of the deceased was good, and that his character for peace and quiet was good.

5. *Same; admissibility of evidence.*—On a trial under an indictment for murder, where the defendant was allowed to prove that he had sworn out a warrant against the deceased and that at the time of the killing the deceased was under bond to appear and answer any charge that might be preferred against him by the grand jury, it is not competent for the defendant to further prove that he had sworn out the warrant "under the advice of counsel."

6. *Homicide; charge as to reasonable doubt.*—On a trial under an indictment for murder, a charge is free from error and properly given at the request of the State which instructs the jury that "a doubt, to acquit the defendant, must be actual and substantial, not mere possibility or speculation. It is not a mere possibility or possible doubt because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt."

7. *Same; same.*—In such a case a charge is erroneous and properly refused which instructs the jury that "if they believe from all the evidence in this case that there existed in the mind of the defendant at the time he fired the fatal shot, a reasonable apprehension of imminent danger to his life or limb, then the defendant could lawfully act upon appearances and kill the deceased, if the defendant was without fault in bringing on the difficulty."

8. *Same; same.*—In such a case a charge is erroneous and properly refused which instructs the jury that "if there be a single juror who has a reasonable doubt of the guilt of the defendant, growing up out of the evidence in this case, the jury should acquit the defendant."

9. *Same; same.*—In such a case a charge is erroneous and properly refused which instructs the jury that "a reasonable doubt, is a doubt growing up out of all the evidence in the case for which you can give a reason, and, if there is a reasonable doubt of defendant's guilt, the jury should acquit the defendant."

10. *Same; charge as to self defense.*—On a trial under an indictment for murder, a charge which instructs the jury that "an apprehension of imminent danger caused by acts or demonstrations by the deceased or by threats or words coupled with acts or declarations, is sufficient to justify a deadly assault upon the deceased," is erroneous and properly refused.

11. *Same; same.*—In such a case, a charge as to self defense, which fails to hypothesize a reasonable belief by defendant that he was in imminent peril, is erroneous and properly refused.

12. *Same; charge as to character of deceased.*—On a trial under an indictment for murder, where the character of the deceased had not been assailed by the defendant, but the State had been allowed to prove, against the defendant's objection, that the general character of the deceased for peace and quiet was good, a charge which instructs the jury that they can not consider any evidence showing or tending to show that the deceased was a man of good character for peace and quiet, is free from error and should be given at the request of the defendant.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. A. A. EVANS.

The appellant in this case, Joe Jimmerson, was indicted and tried for the murder of Ed Searcy, was con-

victed of murder in the second degree, and sentenced to the penitentiary for twenty years.

The trial of the case was had at the fall term of the circuit court. The defendant made a motion to quash the venire drawn and served upon him for the trial of the cause upon the ground that at the preceding spring term of the circuit court several venires had been drawn from the jury box of the county to try the defendant, and also to try other murder cases. That after drawing the names of the jurors from the jury box who were to constitute the special venires the court placed in the jury box the names of the persons so drawn on said special venires and that the special venire drawn for the present trial of the defendant was drawn from the jury box after the names on the former special venires had been restored and returned to such jury box. In connection with this motion were the following facts: At the spring term, 1901, the court drew from the said box two juries to try defendant at that term of the court. He also drew from said box at said spring term two other juries to try murder cases. Both the venires to try defendant at that term were quashed. All four of the juries, or the names of the persons thus drawn as juries, being written on slips of paper, were by the court immediately after each drawing folded up and returned to the jury box. These slips of paper with the names of the jurors were mixed and mingled with the other names in the box and became a part of the contents of the box, in fact they occupied the same position in the box as they did before they were drawn out. The admission made by the defendant in reference to the motions is copied in the opinion. The motion to quash the venire was overruled.

It was shown by the evidence that the killing of the deceased occurred in a public road; that the deceased was going in one direction and the defendant in another, when they met in said road. There was a conflict in the evidence as to what took place at this meeting, the evidence for the State tending to show that the deceased and his wife were walking along the public road, and that the defendant was approaching them,

carrying a shot gun; that as soon as the defendant was near the deceased he lifted his gun to his shoulder and fired upon him; that the deceased turned from the road into a field and the defendant followed him and fired two more shots at him, and that the last two shots inflicted wounds from which the deceased died.

The evidence for the defendant tended to show that as the defendant was going along the public road he met the deceased and, to avoid a difficulty, changed from the side of the road to prevent meeting the deceased, and dceased also changed so as to put himself immediately in front of the defendant, and when they approached to within a short distance, deceased drew from his right hand pants pocket a pistol and presented and tried to shoot defendant, but his pistol, failing to act, he did not shoot; that defendant thereupon shot twice with his shot gun, loaded with small shot, No. 7; that neither shot struck deceased; that thereupon deceased left the road, made a circuit around the adjacent hill, and was concealed from defendant while beyond the hill; that defendant did not follow deceased, but went up on the bank where he could observe deceased and guard against his approach, and when he got to the top of the bank he observed deceased coming from behind the stumps toward him, still having the pistol and trying to shoot defendant; that thereupon defendant fired twice and deceased cringed and thus received the load in a quartering or diagonal direction in the back and leg on the inside of the leg; that deceased then ran east and fell, and defendant returned to the road. There was also evidence for the defendant tending to show that the deceased had improper and illicit relations with the defendant's wife. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently shown in the opinion.

The court, at the request of the State, gave to the jury the following written charges: (1.) "The court charges the jury that a doubt, to acquit the defendant, must be actual and substantial, not mere possibility or speculation. It is not a mere possibility or possible

doubt because everything relating to human affairs and dependent upon moral evidence is open to some possible or imaginary doubt." The defendant duly excepted to the court's giving this charge, and also separately excepted to the court's refusal to give each of the following written charges requested by him: (1.) "The court charges the jury that if they believe from all the evidence in this case that there existed in the mind of the defendant at the time he fired the fatal shot a rasonable apprehension of imminent danger to his life or limb, then the defendant could lawfully act upon appearances and kill the deceased if the defendant was without fault in bringing on the difficulty." (2.) "The court charges the jury that if there be a single juror who has a reasonable doubt of the guilt of the defendant, growing up out of the evidence in this case, the jury should acquit the defendant." (3.) "The court charges the jury that a reasonable doubt is a doubt growing up out of all the evidence in the case for which you can give a reason, and, if there is a reasonable doubt of defendant's guilt, the jury should acquit the defendant." (4.) "The court charges the jury that in order to justify the defendant on the ground of self-defense, it is not essential that there should have been any actual or real danger, if there was an apprehension of imminent danger caused by acts or demonstrations of the deceased, or by his threats or words coupled with his acts or demonstractions; and if the jury find from the evidence that the acts or demonstractions or the threats made by deceased against defendant, if such threats and acts were made, coupled with the acts or demonstrations produced in the mind of the defendant a reasonable apprehension or expectation of some serious bodily harm to himself from the deceased, the defendant would be justified if he acted on such appearances of danger and under reasonable apprehension even though it subsequently turned out that there was in reality no danger, and deceased was free from fault in bringing on the difficulty." (5.) "The court charges the jury that if they believe from the evidence that Searcy brought on the difficulty at the time it occurred, and that defendant was not at the time at fault, and if

[Jimmerson v. The State.]

they further believe from the evidence that the circumstances were such as to create in the mind of a reasonable man a belief that he was in imminent danger of his life or of great bodily harm, and that he could not flee without adding to his danger, they must acquit the defendant." (6.) "The court charges the jury that in order to justify the defendant on the ground of self-defense it is not necessary that the danger from the deceased to the defendant should have been an actual or real danger; but such as would induce a reasonable person in the defendant's position to believe that he was in imminent danger of great bodily harm or injury from deceased under such appearance the defendant would have the right to act and would not be held accountable, though it should afterwards appear that the indications upon which he acted were wholly fallacious and that he was in no actual peril. The rule of law in such case is this: What would a reasonable person, a person of ordinary caution, judgment and observation, in the position of the defendant, knowing what he knew and seeing what he saw, supposed from the situation and the surroudinngs. If such reasonable person, so placed, would have been justified in believing himself in imminent danger of great bodily harm, then the defendant would be justified in acting upon such appearances, and would be entitled to an acquittal at the hands of the jury, if he was without fault in bringing on the difficulty." (7.) "The court charges the jury that the jury can not consider any evidence showing or tending to show that the deceased was a man of good character for peace and quiet in determining the guilt or innocence of the defendant." (8.) "Although the jury may find from the evidence that the State has proved the good character of the deceased for peace and quiet in the neighborhood in which he resided, they can not consider this evidence in considering the guilt or innocence of defendant."

LEE & LEE, G. W. PEACH and A. H. MERRILL, for appellant.—The motion to quash the venire should have been sustained. The acts of the judge in returning to

the jury box the names of jurors that had been previously drawn upon special venires was unauthorized and erroneous.—*Wilkins v. State,* 112 Ala. 55.

The court erred in allowing the State to prove the peaceable character of the deceased, and also erred in refusing to give the charges asked by the defendant relating to the character of the deceased.—*Ben v. State,* 37 Ala. 103; *Danner v. State,* 54 Ala. 127.

The court erred in refusing to give the several charges requested by the defendant.—*Kirby v. State,* 89 Ala. 63; *Robinson v. State,* 108 Ala. 14; *Yeldell v. State,* 100 Ala. 29; *Goodwin v. State,* 102 Ala. 87.

Chas. G. Brown, Attorney-General, for the State.

HARALSON, J.—1. There was no error in overruling the motion to quash the *venire* for the trial of defendant, on the grounds therein stated. It may be admitted, that the slips containing the names of the persons composing the three *venires* which were quashed on motion of defendant at the former term of the court,—two of them for the trial of this defendant, and one of them for the trial of another defendant in a capital case,—should not have been restored to the jury box, after said *venires* were quashed, but should have been destroyed. It is unnecessary for us now to determine that question. However that may be, the fact that the slips containing these names were returned to the jury box, did not of itself, as contended by defendant, so taint and corrupt the box, "that it ceased to be a jury box, and no legal jury could [thereafter] be drawn therefrom." The only ground upon which such a contention can be rested is, that these slips when once drawn from the box could not be legally restored thereto and mingled with the other slips remaining, so as that they could not be thereafter identified, in drawing other *venires* from the box, thereby rendering it possible for the same persons to be drawn and placed on an indefinite number of *venires*. If the judge instead of restoring the slips in the manner alleged, had placed them in a sealed envelope, and thus sealed up had placed them in the box,

the liability to have repeated *venires* composed of some of the same persons, might have been thus obviated. In this case, the slips were not placed in sealed envelopes, nor tied together; but a list of the names on each *venire* was carefully preserved, and these lists are copied in the transcript as exhibits A. B. and C. to this motion. Furthermore, it was admitted by defendant, on the trial of the motion, "that none of the persons drawn on the previous *venires,* marked A. B. and C. were drawn to try this case," at the term at which it was tried. Under this state of facts, it affirmatively appears, that defendant by the alleged wrongful action of the court in restoring said names to the jury box was not thereby deprived of any legal right, or suffered any special injury.—*Wilkins v. State,* 112 Ala. 55; Code, §§ 4997, 4333.

2. The evidence sought to be introduced by defendant and rejected by the court, made the basis of alleged errors as assigned, from 3 to 11, inclusive, was illegal and entirely irrelevant to the issues in the case. These occurrences, as appear, going into the particulars of a former difficulty and objectionable on that account, were all of a date, more than two months prior to this homicide; they purport to have occurred at the house of deceased and at defendant's own house in his absence, and of which, for more than the length of time specified, defendant was fully informed. They had no immediate connection with the fatal attack by defendant on deceased, and of themselves could neither justify nor palliate defendant's act in killing him, nor shed any legitimate light on the transaction.—*Rogers v. State,* 117 Ala. 9; *Ragland v. State,* 125 Ala. 12.

3. On the cross-examination of defendant as a witness, he was asked by the solicitor, if he had not heard that deceased was about to move from the neighborhood, which question was objected to, because the evidence sought was immaterial and irrelevant,—and not because it was hearsay. Its only possible relevancy or materiality rested on the idea, that defendant hearing that deceased was about to move away, desired to kill him before he left for having defiled defendant's wife;

or, as tending to show that deceased did not intend to execute his threats against defendant, and that they were idle talk, and for such purposes the evidence was competent.

4. The State was allowed to prove against the objection of defendant, that the general character of the deceased was good, and also, that his character for peace and quiet was good. The objection interposed was, that the character of deceased had not been assailed by defendant. The objection was well taken, and the evidence should not have been admitted. Not a word of evidence had been introduced by defendant, in respect of the general character of deceased, whether good or bad, nor, as to his character for turbulence, violence or revengefulness. The admission of the evidence is sought to be justified, on the ground that there was evidence by defendant tending to show that deceased had, prior to his killing, threatened to kill defendant, and that he had had illicit intercourse with defendant's wife. These did not authorize proof, in rebuttal, of his general character, nor as distinguishable therefrom, of his character for peace and quiet. They were not introduced and were not admissible to prove general reputation, and, of themselves, did not show deceased's character for peace and quiet to be bad. He might have been guilty of both, and yet not have been a turbulent, violent or revengeful man.—*Ben v. State,* 37 Ala. 103; *Eiland v. State,* 52 Ala. 323; *Hussey v. State,* 87 Ala. 122.

5. The defendant was allowed to prove that he had sworn out a warrant against deceased, and he was under bond to appear and answer any charge that might be preferred against him by the grand jury. In connection with this, he offered to prove that he had sworn out the warrant "under the advice of counsel," but on objection that this statement as to the advice of counsel was "immaterial, irrelevant, illegal and incompetent," the court excluded it, and in this it did not err.

6. There was no error in the charge given for the State. The vices of charges from 1 to 3, inclusive, refused for defendant are manifest; and require no discussion.

· Refused charge 4 was faulty. ˙ Mere "apprehension of imminent danger caused by acts or demonstrations of the deceased, or by threats or words coupled with his acts or declarations," as stated in the charge, were not sufficient to justify a deadly assault upon deceased, as the charge implies. · Moreover, the charge ignores the doctrine of escape.

The 5th charge, to say no more of it, fails to hypothesize the reasonable belief of defendant that he was in imminent peril.

The 6th is subject to the same vice as the 5th. It is besides argumentative and tends to mislead, and ignores the doctrine of retreat.

· From what has been said as to the proof of the good character of deceased, it will appear that charges 7 and 8 requested by defendant and refused, should have been given.

· For the errors indicated the judgment of conviction is reversed and the cause remanded. ·

Reversed and remanded.