# Ragland *v.* The State.

## *Murder.*

(Decided June 6, 1912.   Rehearing denied June 29, 1912.
59 South. 637.)

1. *Appeal and Error; Harmless Error; Evidence.*—Where facts are admitted by a defendant, it is harmless error to receive evidence of such facts.

2. *Homicide; Evidence; Tracks.*—Evidence as to the nature of tracks about the place where the crime was committed, and that they looked as though they were made by someone running, is admissible under the rule that all of the surrounding circumstances about the place of the homicide are admissible.

3. *Same.*—Evidence that a gun wad was found near the place of the shooting was admissible.

4. *Same.*—Where defendant is prosecuted for the murder of his father and there is other testimony showing that he had had a diffi-

[Ragland v. The State.]

culty with his near relatives, the fact that defendant, the day before the killing, remarked that he was going home to die with them, folks or no folks, is admissible.

5. *Same.*—Where defendant was prosecuted for the murder of his father, it was competent to show that at a previous time he had stated that he would have killed his father and grandfather, but for his wife's intervention, and that they were doing bad, and if they did not let him alone he was going to kill them both.

6. *Same; Construction; Manslaughter.*—A charge defining manslaughter and stating that if accused voluntarily killed deceased, and that such killing was the result of a sudden passion, and was not justifiable, and not done with malice, he was guilty of manslaughter in the first degree, is proper under section 7090, Code 1907.

7. *Same; Malice.*—A charge asserting that malice may be implied from the use of a deadly weapon, provided the killing is shown to have been without justification, or unless defendant has rebutted this presumption of malice, is not erroneous as excluding from consideration all evidence save that introduced by defendant in rebuttal of the presumption.

8. *Criminal Law; Venue.*—Where defendant was tried at the county seat of a certain county, the testimony of the witness that the deceased "was killed in this county and state" is sufficient proof of venue.

9. *Witnesses; Impeachment; Cross-Examination.*—Where a witness had testified to defendant's good character, it was not improper, on cross-examination, to permit a question whether the witness had heard that defendant beat his old grandfather, as defendant had the right to bring out whether these rumors were circulated before or after the killing for which defendant was being prosecuted.

10. *Same.*—Where a witness has testified to a defendant's good character, the court should not permit him to be cross-examined as to rumors concerning defendant which he heard after the offense for which he was being prosecuted had been committed.

APPEAL from Colbert Circuit Court.

Heard before Hon. JOHN H. PEACH, Special Judge.

Lester Ragland was convicted of murder in the first degree, and he appeals. Reversed and remanded.

The objections to evidence sufficiently appear from the opinion. The oral charge of the court objected to is as follows: "(1) Malice may be implied from the use of a deadly weapon, provided the killing is shown to have been without legal justification or excuse, or unless the defendant has rebutted this presumption of malice by legal testimony."

(2) "If you believe from the evidence, beyond a reasonable doubt that the defendant voluntarily killed the deceased by shooting him with a gun or pistol, and that such killing was the result of a sudden passion, caused by an assault made upon the defendant by the deceased, and not justifiable, as done in self-defense, and not done with malice aforethought, you will find the defendant guilty of manslaughter in the first degree."

ALMON & ANDREWS, and KIRK, CARMICHAEL & RATHER, for appellant. The court erred in permitting evidence as to the character and location of tracks in the field where the shooting took place, as the witnesses made no pretense to knowledge of whose tracks they were.—*Livingston v. The State,* 105 Ala. 127; *Terry v. State,* 118 Ala. 79; *Morris v. State,* 124 Ala. 46; *Riley v. State,* 88 Ala. 193. The court erred in admitting evidence as to the gun wad.—*Hodge v. State,* 97 Ala. 39. The witness may not be cross-examined as to matters and rumors affecting the character of defendant happening after the commission of the offense for which he is being prosecuted, but should relate to matters affecting his character previous thereto.—*Smith v. State,* 103 Ala. 70; *Griffin v. State,* 90 Ala. 589; *Jones v. State,* 76 Ala. 9. The court was in error in its definition of manslaughter.—*Hampton v. State,* 45 Ala. 82; *Cates v. State,* 50 Ala. 166. The court erred in its charge as to malice from the use of a deadly weapon.—*Burkett v. State,* 154 Ala. 19; *Brown v. State,* 142 Ala. 287; *Kennedy v. State,* 140 Ala. 1. There was no sufficient proof of the venue.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. All the circumstances surrounding the killing are admissible in

evidence, and hence, there was no error committed in the admission of evidence relative to the tracks or the gun wad. Threats are admissible, and the threats in this case were so connected with the other evidence as to render them material and admissible. The court was not in error in excluding particulars of the former difficulty.—*Gordon v. State,* 140 Ala. 29. The oral charge of the court was correct.—*Compton v. State,* 110 Ala. 24; *Wilkins v. State,* 98 Ala. 1; *Gibson v. State,* 89 Ala. 121. There was sufficient proof of venue, as one of the witnesses stated that deceased was killed in this state and county, evidently referring to the county in which the trial was being had.

SIMPSON, J.—The appellant was convicted of the crime of murder, and sentenced to imprisonment for life.

There was no error in allowing the witness William Gibson to testify as to the confession by the defendant that he had killed the deceased. A sufficient predicate was laid, and, besides, the defendant did not deny that he killed the deceased, but rested on self-defense.

There was no error in allowing proof of tracks near the place of the killing. All the surroundings and circumstances are admissible, and the question as to whether the tracks were those of the defendant was for the jury to decide. The numerous cases cited by appellant recognize the propriety of admitting proof of tracks, but simply hold that the witness must not give his opinion as to whose tracks they were, but must state facts, and leave it to the jury to decide whose tracks they were.—*Davis v. State,* 152 Ala. 82, 85, 44 South. 545; *Leonard v. State,* 150 Ala. 89, 93, 43 South. 214.

There was no error in allowing the witness to testify that the tracks looked like they were made by some

one running.—*Smith v. State*, 137 Ala. 22, 27, 34 South. 396.

There was no error in allowing proof of a gun wad being found near the place of shooting, for the same reasons as stated in regard to the tracks. As to all these matters, there was no injury to the defendant, as he admitted that he was there, and that he did fire the gun which killed the deceased.

The reference, in *Hodge v. State,* to proof of the gun wads, does not indicate that there was any error in admitting the testimony.—97 Ala. 38, 39, 12 South. 164, 165, 38 Am. St. Rep. 145. It simply states, what is true as to almost every item of circumstantial evidence, that "by itself, and disconnected with something else to make it relevant, this evidence did not tend to show that defendant, more than any other person, did the shooting."

There was no error in admitting the testimony of the witness Willingham, in regard to remarks by the defendant the day before the killing, to the effect "that he was going home to die with them, folks or no folks." The other testimony showed that the defendant had had a difficulty with his home people, to which he was referring. It was for the jury to determine whether the remarks amounted to threats.

The same is true with regard to the testimony of the witness Broaden, as to statements made by the defendant, to the effect that he would have killed both his father and grandfather but for his wife. This showed the animus of the defendant towards his father, whom he afterwards killed. The further statements of this witness, to the effect that his father and grandfather were "doing pretty bad," and that if they did not let him alone he was going to kill them both, were clearly admissible, as the court held.

The witness Dee Smith having testified to the good character of the defendant, there was no error in permitting him to be questioned, on cross-examination, as to whether he had heard that the defendant beat his old grandfather.—*Thompson v. State,* 100 Ala. 70, 72, 14 South. 878; *Smith v. State,* 103 Ala. 57, 70, 15 South. 866; *Terry v. State,* 118 Ala. 79, 86, 23 South. 776; *Williams v. State,* 144 Ala. 14, 18, 40 South. 405; *Andrews v. State,* 159 Ala. 15, 25, 48 South. 858. If the defendant so desired, he could have required of the witness, on re-examination, whether what he had heard was before or since the commencement of this prosecution, and, if since, brought the matter to the attention of the court. The only objection made to the question was that it was illegal, irrelevant, and immaterial.

The witness Matthews, having testified that the defendant's character or reputation was good, was asked by the solicitor, "After this case came up, didn't you hear about him having beat his old grandfather?" which question was objected to, and the objection overruled. Upon this question, it is the opinion of the writer that in this the court erred. While, as above shown, particular questions may be asked of character witnesses, in order to test the accuracy of their testimony, and considerable latitude has been allowed along that line, yet it is only the character which the defendant has borne up to the time of the commission of the offense which can be inquired into. Otherwise a witness who could conscientiously bear testimony to the good character of the defendant up to the time of the commission of the offense might be liable to have his testimony to some extent discredited by the rumors that are liable to spring up when a man is accused of a crime, or even by those which have been manufactured for the very purpose of breaking the effect of the

character witness' testimony.—*Griffith v. State*, 90 Ala. 583, 589, 8 South. 812.

In this opinion DOWDELL, C. J., and ANDERSON, MAYFIELD, and SAYRE, JJ., concur.

## ON REHEARING.

PER CURIAM.—There was no error in that part of the oral charge of the court recited in the first exception. It is not liable to the criticism suggested, that it excludes from consideration all evidence save that introduced by the defendant in rebuttal of the presumption of malice, as the presumption is stated to exist only "provided the killing is shown to have been without legal justification or excuse."

There was no error in that part of the oral charge recited in the second exception.—Code of 1907, § 7090; *Clarke v. State*, 117 Ala. 1, 8, 23 South. 671, 67 Am. St. Rep. 157; *Parnell v. State*, 129 Ala. 7, 15, 16, 29 South. 860; *Lewis v. State*, 96 Ala. 6, 10, 11 South. 259, 38 Am. St. Rep. 75; *Cates v. State*, 50 Ala. 166, 168; *Hampton v. State*, 45 Ala. 82, 84.

There is no merit in the contention that the venue was not proved. The witness William Gibson states that "he was killed in this county and state." As the case was tried at Tuscumbia, the county seat of Colbert county, the testimony of this witness cannot mean anything but that the killing was in Colbert county.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, MAYFIELD, and SAYRE, JJ., concur. MCCLELLAN and SOMERVILLE, JJ., dissent.

SOMERVILLE, J.—(dissenting.)—The judgment of conviction in this case is reversed on a single ground —the permission of a question by the state on the cross-examination of one of defendant's character witnesses, and the admission of his answer as evidence.

This witness had testified that defendant's general reputation was good, and that his reputation for peace was also good. The cross-question was: "After this case came up, didn't you hear about him having beat his old grandfather?" The witness answered that he had. I do not deny that the fact thus elicited, relating to defendant's reputation post litem motam, was improperly admitted even on cross-examination; nor that ordinarily it might be capable of so prejudicing defendant's case with the jury as to render its admission reversible error. But in view of other evidence of the same fact, already and otherwise before the jury, I am satisfied, not only reasonably, but beyond any reasonable doubt, that its admission through this witness also had nothing whatever to do with the jury's finding that defendant was guilty of murder. And, being thus satisfied, it is my plain duty, under the inhibition of section 6264 of the Code, to dissent from the judgment of reversal.

Theoretically the allowance of this question and answer may have operated in two ways: (1) To weaken the effect of the witness' testimony that defendant's reputation was good; and (2) to excite prejudice against defendant himself, if the jury should believe as true the report that he had beaten his grandfather.

1. Eleven witnesses for defendant testified to his good general reputation, and nine of them to his good reputation for peace. It is hardly conceivable that the fact that the witness Matthews heard of defendant's beating his grandfather, after this case arose, could

have weakened the effect of his testimony that defendant's reputation had *previously* been good; for it in no way contradicted his testimony to that effect; and, in view of the fact that this witness was but one of eleven, it could not have figured materially in the jury's estimate of defendant's reputation.

2. It may, nevertheless, have tended to the injury of the defendant, if the jury credited the report, since all men are likely to condemn the beating of one's grandfather as vicious and unnatural; and, if this were all that the record showed in this regard, I would concur in the reversal. But it is not all. The state's witness George Broaden testified to the following conversation between himself and defendant on the night before defendant killed his father: Defendant: "Uncle George, I came mighty near getting into lifetime trouble." Witness: "What, Lus?" Defendant: "Well, the old man—grandpa's mule, he fastened up in my lot, and he went to turn it out, and I whipped him, and I throwed a bridle over his head and pulled him to me. Yes, sir, the old man; and he hollered for papa, and he run up there, and I run to get my gun and aimed to kill them both there together; but my wife wouldn't let me come out." This testimony went to the jury, and was before them when they made up their verdict. Moreover, when defendant testified for himself, he specifically referred to this statement by Broaden, and, though he denied saying that he aimed to kill them both, or anything like that, he did not deny his narrative as to whipping his grandfather. In the face of all this, I think my Brethren are overrefining when they impute to a merely collateral rumor an injurious result distinct from or greater than that produced by the concrete fact delivered to the jury as above set forth.

.3. Bad blood between defendant and his father, and mutual threats to kill each other, were plentifully prov‑ ed by the witnesses on both sides. The chief of police of Tuscumbia testified that he examined the body of de‑ ceased, and that the gun shot wounds were in *the back of the head and neck,* and that tracks leading from de‑ fendant's home to the place of the killing were far apart, and indicated that they were made by some one running. This could not comport with defendant's claim that he killed in self-defense, and furnishes a cer‑ tain explanation of the verdict of guilty by the jury.

I am convinced the erroneous ruling complained of did not contribute in the slightest degree to that re‑ sult; and hence I am constrained to this dissent.

McCLELLAN, J., concurs in this dissent.