# Consford v. The State.

### Murder.

(Decided February 6, 1917. Rehearing denied March 23, 1917.)
74 South. 740.)

1. **Homicide; Evidence.**—It is admissible to show that a witness followed tracks from near the home of defendant to the place of the killing; but the question as to whether the tracks were those of the two defendants, was for the jury.

2. **Evidence; Confession.**—Where two persons were prosecuted for murder, testimony of a voluntary confession of one of them was admissible, if properly limited so as to affect only the person making it.

[Consford v. The State.]

3. **Same; Declaration of Conspirator.**—When a conspiracy has been established, any act or declaration of a conspirator made or done in furtherance of the common design is admissible in evidence against the co-conspirator.

4. **Homicide; Evidence.**—Where defendant had had trouble with deceased over certain matters relative to deceased and defendant's daughter, evidence that deceased was a married man was immaterial and inadmissible.

5. **Same; Res Gestae.**—Acts and statements of one accused of murder immediately after the killing, and constituting res gestae are admissible.

6. **Witnesses; Examination; Bias.**—The fact that a state's witness ran with deceased a great deal about the time of the murder, was immaterial and inadmissible.

7. **Homicide; Self Defense; Evidence.**—In the absence of a showing that defendant knew of the habit of deceased in habitually carrying a pistol, evidence that deceased had habitually carried a pistol was inadmissible.

8. **Same.**—Evidence of trouble between defendant and deceased a week prior to the killing was too remote and not of such character as to palliate the offense.

9. **Same.**—Where defendant sought to show a relationship between deceased and his daughter, and counsel stated that if the witness was permitted to answer, he would state that deceased carried defendant's daughter to a certain house and intended to keep her there for immoral purposes, the court properly refused to permit the question as a witness cannot testify as to what another party intended to do.

10. **Appeal and Error; Review; Admissible and Inadmissible Evidence.**—Where both competent and incompetent testimony is called for by a single question, the court may properly sustain objection to question, since the court is not bound to separate the legal from the illegal.

11. **Witnesses; Credibility.**—Where a defendant introduces a witness he vouches for the truth of the testimony of such a witness.

12. **Homicide; Self Defense.**—The evidence examined and held to preclude the theory of self defense, since it showed that defendant was not free from fault.

13. **Same; Question for Court.**—It is not an invasion of the province of the jury for the court to determine whether under the facts proven, the defendant may set up self defense.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Will C. Consford and Gertrude Consford were prosecuted for murder. Gertrude Consford was acquitted, and Will C. Consford was convicted and appeals. Affirmed.

FARMER & FARMER, and W. O. MULKEY, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

[Consford v. The State.]

BRICKEN, J.—The defendant Will C. Consford, together with Gertrude Consford, his daughter, were jointly indicted for murder in the first degree. Upon the trial of this case the defendant Gertrude Consford was acquitted by the verdict of the jury. Will C. Consford, the other defendant, was convicted for the offense of murder in the second degree, and was sentenced to ten years' imprisonment in the penitentiary.

The state's theory of the case was to the effect that a conspiracy was entered into by and between the two defendants above named to take the life of the deceased, Clayton Goulding; that Gertrude, at the request of her father, wrote to deceased to meet her at a certain place (the place of killing) on a certain night; and that Will C. Consford accompanied her armed, with a double-barreled shotgun, and concealed himself nearby, and shot the deceased practically without warning when he came in response to the request contained in the letter above mentioned. There was no dispute that the defendant's daughter did write the letter which was introduced in evidence and admitted by her. No exceptions were reserved during the progress of the trial, except as to the ruling of the court upon the evidence.

(1, 2) The first ruling insisted upon as constituting reversible error was as to the court's permitting witness Pate to testify that he saw and followed tracks of a man and a woman at and near the place of the shooting; that in tracing the tracks, both of which were going in the same direction and from a fence near defendant's home toward the place of killing, he could see where the woman's track stepped upon the man's track occasionally, etc. There was no error in allowing proof of tracks near the place of killing. All surroundings and circumstances are admissible, and the question as to whether the tracks were those of the two defendants, a man and a woman, was for the jury to decide; hence the court committed no error in overruling the objection to, and in refusing to exclude, the testimony of witness Pate as to tracks. —Ragland v. State, 178 Ala. 59, 59 South. 637; Ethridge v. State, 124 Ala. 106, 27 South. 320.

(3) The court properly permitted witness Pate to testify to the confession made by defendant Gertrude, as it was first affirmatively shown by this witness that the statement or confession so made was wholly voluntary, and the required rule as to the admissibility of this character of testimony had been complied with and fully met. Furthermore, the court, at the time

[Consford v. The State.]

this evidence was received, confined the consideration by the jury of this evidence to Gertrude Consford, and in its oral charge the court expressly placed the same limitation upon said testimony.

(4) The objection to the testimony of state witness May Adams was without merit, and not well taken. The facts testified to by this witness pertained to matters which happened before the killing, and may have had the tendency to assist in establishing a conspiracy between the defendants in line with the state's contention. It is a well-settled principle of law that where a conspiracy is established, any act or declaration of a conspirator made or done in furtherance of the common design is admissible in evidence against a coconspirator.—*West v. State*, 168 Ala. 4, 53 South. 277.

(5) In this case it would appear that it was immaterial as to whether the deceased was a married man or not; therefore there was no error of a reversible nature in the court's having sustained the objection of the state to question propounded to witness Alf Black which sought to prove that the deceased was a married man. Also, this matter was already in evidence, and was without dispute on the part of the state.

(6) There was no error in permitting the state to show what the defendant did immediately after he shot deceased; it having been shown by the testimony of witness Marvin Dunn that the acts and statements of the defendant were clearly a part of the res gestæ.—*Pate v. State*, 150 Ala. 10, 43 South. 343.

(7) Neither was there error in sustaining the objection by the state to the question as propounded to witness Marvin Dunn, which question was as follows: "You run with Clayton Goulding down there a good deal, didn't you, about that time?" It was not error, for clearly this question did not call for the answer which was stated would be given to it, and a responsive answer to the question as framed could not have reasonably elicited that character of testimony which is permissible in order to test the credibility of the witness on the grounds of bias or prejudice.—*Storey v. State*, 71 Ala. 329.

(8) The next assignment of error insisted upon is that the court improperly sustained the objection to the question seeking to show the habit of deceased in regard to carrying a pistol. There was no error in this ruling of the court, for it has been repeatedly held in this state that such questions were improper, unless coupled with proof that the defendant knew of said habit.

[Consford v. The State.]

—*Sims v. State*, 139 Ala. 73, 36 South. 138, 101 Am. St. Rep. 17;
*Rodgers v. State*, 144 Ala. 32, 40 South. 572.

(9) The next insistence of error was in the court's refusal
to allow the defendant to show that illicit relations had existed
between the deceased and the defendant's daughter, who was a
codefendant in this case. Repeated efforts to show the particu-
lars of such alleged illicit relations were not allowed by the court,
and it is insisted that the court erred in this connection. The
dual or twofold defense interposed by the defendant in answer
to the indictment—i. e., not guilty, and not guilty by reason of
insanity—appears to have been abandoned during the progress of
the trial, and it appears that self-defense alone was relied upon.
Whether this is true or not, we are of the opinion, after a careful
reading of the record, that the conduct of the deceased in connec-
tion with defendant's daughter, sought to be shown by the de-
fendant, and which had happened a week before, was too far
removed from the time of the killing, and was too remote, and
had no immediate connection with the fatal attack on the de-
ceased by the defendant, to be germane to the issue formed by the
defendant's second plea, and was not of such character as to
justify or palliate the defendant's act complained of in the in-
dictment; nor could it shed any legitimate light on the transac-
tion that would be admissible.—*Jimmerson v. State*, 133 Ala. 18,
32 South. 141; *Rogers v. State*, 117 Ala. 9, 22 South. 666; *Ragland
v. State*, 125 Ala. 12, 27 South. 983. Under this principle of law,
the court did not err in its rulings on this question.

(10, 11) The objections to these questions were properly
sustained, for the further reason that when counsel stated to the
court the answer he expected to these questions, he said that the
witness would testify, if permitted to answer: "That the de-
ceased carried Gertrude Consford to a house of ill fame, and
there had sexual intercourse with her, and intended or expected
keeping her there for that purpose."

If, upon a most liberal construction under the facts of this
case, any part of such testimony could have been held to be
legal and competent, it cannot be seriously contended that it is
competent for a witness to testify what another party intended
to do; and if there was any legal or competent testimony in this
connection, and also illegal and incompetent testimony, the court
was not bound to separate the good from the bad, sustaining the
one and ruling out the other.—*Ragland v. State*, 125 Ala. 12, 25,

[Consford v. The State.]

27 South. 983. This brings us, then, to the proposition, Was the defendant entitled to this testimony as tending to show a motive for the deceased being the aggressor in the fatal difficulty?— *Gafford v. State,* 122 Ala. 54, 25 South. 10. In *Gafford's Case, supra,* it was held that testimony of this character was admissible for this purpose; but this doctrine has been limited strictly to where the testimony showed that the defendant claimed self-defense, and was entitled under the evidence to urge it as a defense. It has been further held that if the defendant is not in a position to invoke self-defense, such testimony is not admissible. —*McWilliams v. State,* 178 Ala. 68, 60 South. 101.

"A slayer of a human being must not be unmindful of his words or acts on the occasion of the homicide, which are likely to produce the deadly combat. And if by his acts, words or conduct he shows a willingness to enter the conflict, or if by his words or acts he invites it, he must be held to have produced the necessity for slaying his adversary, and cannot invoke the doctrine of self-defense."—*Stallworth v. State,* 146 Ala. 15, 41 South. 186.

(12, 13) In the instant case, the evidence is without conflict that the defendant Will C. Consford stated to witness Alf Black several hours before the killing, "I am going to kill the god damned son of a bitch" (speaking of and meaning the deceased). There was also evidence that deceased had threatened the defendant, which threats had been communicated to him, and, notwithstanding this information, the defendant himself testified that when he first started to the scene of killing, he remembered the threats of the deceased against him, and thereupon turned back, and went in the house and got his gun, and went at once to the scene of the killing, and waited there for some time for the deceased to arrive; that he shot and killed deceased with a double-barreled shotgun after deceased had shot at him with a pistol, etc. The defendant proved by his witness John Goulding that a pistol belonging to deceased was found the next morning 10 or 15 steps from where deceased was shot, but this witness also testified that the pistol when found was fully loaded; that there were six cartridges in the gun, and "one of them had been shot out of it." This was the testimony of defendant's own witness, and the truthfulness of this witness was vouched for by the defendant when he offered him as his witness. It appears from the undisputed evidence in this case that the defendant was not in a posi-

[Consford v. The State.]

tion to invoke self-defense, for that he was not entirely free from fault in provoking or bringing on the difficulty, or contributing to the situation out of which the difficulty grew. Under these conditions, it is clear that the court committed no error in its rulings upon the admissibility of the evidence in this case; and, there being no other errors assigned, and as there is no other error in the record of a reversible nature, the judgment and sentence of the court below are affirmed.

Affirmed.

## ON REHEARING.

In the application for rehearing in this case it is contended that the decision therein contains a misstatement of facts, and also that the refusal of the trial court to admit testimony showing the illict relations between the deceased and the defendant's daughter some time prior to the killing was reversible error. It is not contended that this testimony was admissible for the purpose of reducing the crime from murder to manslaughter, as it was too far removed from the time of the killing to serve to engender such passion as would rebut malice. After a careful consideration of the matters thus brought to our attention, we are of the opinion that the criticism of the court's statement of facts is not well taken. While the quotation complained of is not in the exact words as testified to by the defendant, it is so nearly the same that it would in no wise change the application of law, and we do not consider that it calls for a correction. We are of the opinion that the testimony as to illicit relations between the deceased and the daughter of the defendant was not admissible for the purpose of showing a motive for the deceased to be the aggressor at the time of the killing, for the undisputed testimony in this case, under the rule laid down in *McWilliams v. State,* 178 Ala. 68, 60 South. 101, clearly shows that the defendant by his own actions and words was not free from fault in bringing on the difficulty; and this being true, he could not invoke the doctrine of self-defense. The defendant testified that when he started to the place of killing he knew that the deceased had made threats against him; that he had been told this by Mr. Quick, Mr. Daughtry, and Mr. Quattlebaum. Their testimony was to the effect that deceased stated that he would kill the defendant, if he approached him about the matter, or at least this was a rea-

[Consford v. The State.]

sonable inference from his statement. The defendant testified that in view of these threats, he armed himself with a shotgun before he went to the scene of the killing. He further testified that he was advised by his daughter that she was expecting the deceased to meet her at that place, and that she had sent for him for the purpose of breaking off with him. He also admitted that he heard his daughter send for the deceased. He further testified that his daughter endeavored to persuade him to leave the scene where the difficulty took place, and thereby avoid meeting the deceased; but instead of doing so and going with her as requested, he sat down on the ground with his gun in his hand and in readiness. It thus appears that the defendant deliberately and intentionally waited for the deceased without any excuse (inasmuch as his daughter desired to leave the place with him), for the purpose of approaching the deceased on the very subject which he anticipated he would need his gun to defend himself from an attack by the deceased when he approached him on this subject.

(14) There is no merit in the argument to the effect that the trial court invaded the province of the jury and determined that the defendant could not set up self-defense under the facts. This is a question for the court to determine when evidence of this character is sought to be admitted. These views are in line with those expressed by the Supreme Court in *McWilliams' Case*, *supra*, and necessarily must govern in the instant case.

After a careful examination of the application for a rehearing and of the well-prepared briefs of the able counsel, we are of the opinion that no question has been raised which has not been fully considered and discussed in the opinion, the conclusions whereof we deem to be sound, and for these reasons, and under the authority of *McWilliams v. State*, 178 Ala. 68, 60 South. 101, *Scroggins v. State*, 120 Ala. 369, 25 South. 180, and *Brewer v. State*, 160 Ala. 66, 49 South. 336, the application for rehearing is denied.

Application denied.